(93 N. W. Rep. 860)

---

ISAAC P. CLAPP *vs.* CHARLEMANGE TOWER, JR., *et al.*

---

**Equitable Conversion—Contract for Sale of Realty—Death of Vendor.**

A contract for the sale of real estate, which is valid and enforceable in equity, operates as a conversion. The vendor's interest thereafter in equity is in the unpaid purchase price, and is treated as personalty; the vendee's interest is in the land, and is realty. Upon the

death of the vendor his interest passes to his executors as personalty, and continues as such for the purposes of administration; and, where such executors have canceled the contract of sale for default of the purchaser, and thus regained title, they may sell and convey such real estate, and account to the court of their appointment for the proceeds as personalty, and the title so conveyed is good as against the heirs of the decedent claiming title by succession.

Appeal from District court, Cass county; *Charles A. Pollock,* J.

Action by Isaac P. Clapp against Charlemange Tower, Jr., and others. Demurrer to answer sustained, and defendants appeal. Affirmed.

*Robert M. Pollock,* for appellants.

*William J. Clapp,* for respondent.

YOUNG, J. This is an action to quiet title to a section of land situate in Cass county, which was conveyed to the plaintiff by the executors of the last will and testament of Charlemange Tower, deceased. The complaint alleges that the plaintiff is the owner of said real estate, and that the defendants claim an interest therein adverse to the plaintiff, and prays that they be required to set forth their claims, to the end that their validity may be determined, and that title be quieted in the plaintiff. Defendants, in their answer, allege that they are the next of kin and all of the heirs at law of said Charlemange Tower, deceased, and all the surviving legatees under his will; that said Charlemange Tower died in, and a resident of, the city of Philadelphia, Pa., and that his will was probated there; that the land in question was sold by said deceased to one Hadley upon a contract which provided for the execution and delivery of a deed to him upon the making of certain deferred payments specified in said contract; that subsequent to the death of Charlemange Tower the executors of his will foreclosed said contract by reason of the default of said Hadley in making payments according to its terms, and that said land became a part of the estate of said deceased; that thereafter the executors, acting upon the theory that said land was subject to the principle and rule of equitable conversion, and was for the purposes of administration to be treated as personal property, sold and conveyed the same to the plaintiff, who has ever since been in possession of the same, claiming the ownership and possession thereof by virtue of said deed from said executors; that the defendants are the owners of said real estate by virtue of their heirship, and ask that the title be quieted in them. The plaintiff demurred to the answer upon the ground that it does not state facts sufficient to constitute a defense or counterclaim. The trial court sustained the demurrer, and the defendants appeal from the order sustaining the same.

The will of Charlemange Tower was before this court in the case of *Penfield* v. *Tower,* 1 N. D. 216, 46 N. W. Rep. 413. This court held that, so far as its provisions related to real estate situated in this state, it was inoperative and void, and that the real estate of said deceased in this state must be distributed according to the

law of succession of this state, and that the personal property should be distributed according to the terms of the will. The only question involved upon the issue raised by the demurrer is whether the land in question should, under the facts pleaded in the answer, be treated as real estate or as personal property. If, for the purposes of administration, it retains the character of real estate, the will not being operative, it descended directly to the heirs, the defendants in this action. This is conceded. If, on the other hand, it is to be considered as personal property, it then went to the executors for the purposes of distribution, and they had full right and authority to sell and convey the same in the manner and form pursued, and to account for the proceeds to the orphans' court of the state of Pennsylvania, from which they received their appointment. It is very properly conceded by both parties that under the rule and doctrine of equitable conversion land may be treated as money and money as land, whenever, in equity, it is proper to invoke and apply the principle of that doctrine. "Equitable conversion is defined as a constructive alteration in the nature of property by which, in equity real estate is regarded as personalty or personal estate as realty." 7 Amer. & Eng. Enc. of Law (2d Ed.) p. 464. And the doctrine has its origin in the maxim of equity that that is regarded as done which should be done. *Penfield* v. *Tower, supra.* There is no room for doubt that upon the facts pleaded in the defendants' answer the rule of equitable conversion is applicable, and that the execution and delivery of the contract of sale of the real estate in question by Charlemange Tower during his lifetime—and the same was valid and enforceable at the time of his death—worked a conversion of the land into personalty. His interest, after the execution of the contract and at the time of his death, was the money contracted to be paid by the purchaser, and the purchaser's interest was the land contracted to be conveyed. In such cases, says Pomeroy, in his work on Equity Jurisprudence (section 105), "the vendor still holds the legal title, but only as a trustee, and he in turn acquires an equitable ownership of the purchase money. His property, as viewed by equity, is no longer real estate, in the land, but personal estate, in the price; and if he dies before payment, it goes to his administrators, and not to his heirs. In short, equity regards the contracting parties as having changed positions, and the original estate of each as having been 'converted'—that of the vendee from personal into real property, and that of the vendor from real into personal property." The doctrine is laid down in *Williams et al.* v. *Haddock,* 145 N. Y. 144, 39 N. E. Rep. 825, as follows: "Courts of equity regard that as done which ought to be done. They look at the substance of things, and not at the mere form of agreements, to which they give the precise effect which the parties intended. It is presumed that the vendor, in agreeing to sell his land, intends that his property shall assume the character of the property in which it is to be converted, and it cannot be denied that it is competent for the owner of land thus to make such land into money at his sole will and plea-

sure. If the vendor die prior to the completion of the bargain, provided there has been no default, the heir of the vendor may be compelled to convey, and the proceeds of the land will go to the executors as personal property." The rule is uniform, we think, that,where a valid and binding contract of sale of land has been entered into, such as a court of equity will specifically enforce against an unwilling purchaser, the contract operates as a conversion. *Keep et al.* v. *Miller*, 42 N. J. Eq. 100, 6 Atl. Rep. 495. See, also, 7 Am. & Eng. Enc. of Law (2 Ed.) 471, cases cited in note 1. The only authority cited by appellants in opposition to this general rule which can be said to be at all in point is *Kerr* v. *Day*, 14 Pa. 112, 53 Am. Dec. 526. That case, however, cannot be considered as an authority in their favor, for in that case the contract of sale was not enforceable, and for that reason it was held that a conversion was prevented. Had the contract been valid and enforceable, as the contract in the case at bar, it is evident that the decision would have been otherwise.

The real estate in question, having assumed the character of personalty went to the executors, and it continued as personalty for the purposes of administration, so that the executors could, after the cancellation of the contract, sell and convey the same to the plaintiff in the manner and form pursued.

The demurrer to the answer was, therefore, properly sustained, and the order will be affirmed.

MORGAN, J., concurs.

COCHRANE, J., did not hear the argument or participate in the decision.