QUINN DISTRIBUTING COMPANY, a foreign corporation, Plaintiff and Respondent,

v.

NORTH HILL BOWL, INC., a corporation, Defendant and Appellant,

and

Kenneth Runemark, Defendant and Respondent.

No. 8199.

Supreme Court of North Dakota.

Jan. 25, 1966.

Pringle, Herigstad, Meschke, Loder, Mahoney & Purdy, Minot, for North Hill Bowl, Inc., defendant and appellant.

Letnes, Hansen & Murray, Grand Forks, for Quinn Distributing Co., plaintiff and respondent.

Palda, Palda, Peterson & Anderson, Minot, for Kenneth Runemark, defendant and respondent.

DOUGLAS B. HEEN, District Judge.

Asking trial de novo, defendant North Hill Bowl, Inc., appeals from a District Court judgment awarding plaintiff money damages allegedly due on an account for equipment sold such defendant. The action was tried to the District Court sitting without a jury.

Defendant North Hill Bowl, Inc.—C. Morris Anderson, president and principal stockholder—operates bowling alleys, and in conjunction therewith and as a part of its business activities, leased an equipped and furnished restaurant and drive-in located in its building to defendant Kenneth Runemark, North Hill receiving as rental, a percentage of the gross revenue thereof.

In the early part of April 1961, plaintiff Quinn Distributing Company demonstrated an ice cream shake mixer and a soft drink dispenser at a restaurant show staged at Minot. During this floor showing, Quinn's sales manager, Howard Larsen, discussed the merits and prices of the machines with Anderson and Runemark. Shortly after the closing of the restaurant show, the machines were installed on an indefinite trial basis, arranged by Anderson and acquiesced in by Runemark, at the cafe and drive-in leased by Runemark from defendant North Hill.

Although Larsen after this installation of these machines made two or three calls at the cafe, no definite sales arrangement resulted because disrupted business conditions due to road construction prevented determination of whether use of the machines would result in increased sales volume, as claimed during preliminary discussions leading to the trial installation, which volume increase of course would be under the leasing terms mutually beneficial to defendants North Hill Bowl and Runemark.

The trial use period of the machines extended on to August 1961, when such drifting state of affairs apparently became intolerable to the plaintiff company, for Donald Quinn and Larsen, plaintiff's president and sales manager respectively, on August 1, 1961, made a special trip to Minot and met with Anderson, president of defendant North Hill Bowl and defendant Runemark, the meeting continuing on over through noon of the following day, in an attempt to "finalize" the transaction—in Donald Quinn's words, " * * * either completing the deal or getting the equipment back."

Defendants' version of these lengthy meetings of August 1 and 2, 1961, was that there was considerable discussion between Anderson and Runemark, participated in by Donald Quinn and Larsen, about joint purchase of the machines by defendants North Hill Bowl and Runemark; about various percentages of contribution; of the necessity of securing financing for the purchase; and it is the claim of defendants that their ultimate purchase of the equipment was conditioned upon their obtaining financing and that this was known to plaintiff.

On the other hand, Donald Quinn, although overhearing Anderson and Runemark discuss finances and percentages, stated he paid no attention to this conversation, maintaining that because of past financial experience in dealing with tenants, he would not and did not deal with defend-

ant-tenant Runemark, but stoutly maintains that the sale was closed with Anderson for defendant North Hill Bowl and claiming that Anderson stated a check for the price of the machines would be in the mail on the following Friday, a matter of days, Anderson thereupon shaking hands with Donald Quinn on the deal. Donald Quinn testified that he relied on the honored—by time if nothing else—hand shake assurance on admonition of Larsen who did not want to upset Anderson. The expected check was not received by plaintiff.

At some time around the middle of August 1961, Anderson telephoned Larsen at Moorhead and informed the latter that there would be no purchase of the machines because of Runemark's inability to obtain financing, Anderson further testifying that Larsen then said something about picking up the equipment.

Testimony developed that operating difficulties arose with the fountain pop dispenser which was taken out of operation prior to the meetings on August 1 and 2, 1961. The shake machine was used in defendants' business until the early part of November 1961 when both machines, at the expense of defendants North Hill Bowl and Runemark, were shipped to plaintiff at Minneapolis who refused to accept the shipment.

At the conclusion of trial in District Court, the plaintiff's claim against defendant Runemark was dismissed, but holding adversely to defendant North Hill Bowl, the Court awarded judgment to plaintiff and against this defendant for the adjusted price of the machines. In so decreeing judgment, the trial court held that defendant North Hill Bowl's continued use of the machines in question, after knowledge that attempted financing had failed, precluded the claim that the purported sale contract was unaccepted, and so held defendant North Hill Bowl liable for the purchase price of the machines. From such order of dismissal, and judgment, defend-

ant North Hill Bowl has appealed, asking trial de novo.

51-01-20 NDCC provides insofar as applicable here:

"Unless a different intention appears, the following are the rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer:

"1. * * * 3. * * *

"4. When goods are delivered to the buyer on approval or on trial or on satisfaction, or other similar terms, the property therein passes to the buyer:

"a. When he signifies his approval or acceptance to the seller or does any other act adopting the transaction;

"b. If he does not signify his approval or acceptance to the seller, but retains the goods without giving notice of rejection, * * * if no time has been fixed, on the expiration of a reasonable time. What is a reasonable time is a question of fact."

From consideration of the foregoing facts, it is concluded that as of the meetings of August 1 and 2, 1961, neither the plaintiff nor any other person involved regarded the property in the machines as passing to the defendants because of any act signifying their approval or acceptance of the machines or of the transaction, nor because of their retention of the equipment for an unreasonable length of time without rejection thereof. The trial period for use of the equipment, however, did end with these August meetings.

The question presented is whether a sale of the goods was contracted by the parties as a result of their meetings of August 1 and 2.

It must be noted that in so "finalizing" the sale, Donald Quinn departed Minot on a handshake and what is more important, without some tangible arrangement for sale of the machines or with some form of payment therefor, either in cash or by check. Under such circumstances, while there may have been agreement by the parties as to certain essential terms of the sale contract, nevertheless, since Donald Quinn left Minot without payment or material arrangement therefor, and thus short of his announced goal of " * * * either completing the deal or getting the equipment back," the inescapable conclusion is that indeed something yet remained to be done to complete—to close out—to "finalize"— the deal.

Where in the contemplation of the parties something remains to be done to establish contract relations, there is then no present contract. O'Brien v. Fricke, 148 Neb. 369, 27 N.W.2d 403. And it is established that the formation of a contract may be conditioned upon the act of a third person. Lilly v. Haynes Co-op. Coal Mining Co., 50 N.D. 465, 196 N.W. 556; 17A C.J.S. Contracts § 456f, page 584; See, First State Bank of Eckman v. Kelly, 30 N.D. 84, 152 N.W. 125.

In construing the agreement of the parties in this case, their intention must be ascertained from the whole transaction. 51-01-19 NDCC; 17A C.J.S. Contracts § 338, page 319 et seq.; 5 Williston on Contracts, 3rd Ed., Section 663, page 127.

In the instant case, the disclosed sale arrangements, unequivocal as the terms may have been, became effective or operative as a contract only if financing could be obtained, the contract obligations of the parties being conditioned on occurrence of that contingency. 9-01-11 NDCC; 5 Williston on Contracts, 3rd Ed., Section 666A, page 142; 17 Am.Jur.2d, 338 et seq. The conclusion obtains, after review of all evidence in the case, that in the absence

of financing, a condition precedent essential to existence of a binding agreement, there was no contract, good faith of the parties not being an issue in this case, and it is so held.

 It is urged that defendants' continued use of at least a part of the goods after notifying plaintiff of the financing failure constituted acceptance of the machines with title passing to defendants and consequent liability therefor. In this instance, such conclusive effect cannot be accorded the continued use as disclosed by the facts of this case. Apart from authority that continued use " * * * is not necessarily acceptance, though it may be evidence of it," 2 Williston on Sales, Rev.Ed., Section 272, page 36, but cf., 51–01–49 NDCC; the parties here limited and modified the bailment relationship by agreement, so that after August 2, the defendants possessed the property, not on the basis of "sale on approval," but rather by virtue of an executory contract of sale contingent on condition, namely, that of obtaining financing, 17A C.J.S. Contracts § 337, page 315. Such condition failing to materialize, whatever other resort to legal relief the plaintiff may have, and as previously held, the defendants have no liability for the purchase price of the machines.

It follows that the order of the District Court dismissing plaintiff's cause of action as to defendant Runemark is affirmed; but that judgment as decreed by the District Court in favor of plaintiff and against defendant North Hill Bowl is in all things reversed and set aside, and the case is remanded to the District Court with instructions for entry of an order of dismissal as to defendant North Hill Bowl in conformity herewith.

BURKE, C. J., and ERICKSTAD and TEIGEN, JJ., concur.

KNUDSON, J., not being a member of the Court at the time of submission of this case, did not participate.

STRUTZ, J., did not participate; Honorable DOUGLAS B. HEEN, Judge of the District Court, Second Judicial District, sitting in his stead.