Theodore GERHARDT and Clara Gerhardt, Plaintiffs and Appellees,

v.

Adam FLECK and Darlene Fleck, Defendants and Appellants.

Civ. No. 9318.

Supreme Court of North Dakota.

July 27, 1977.

Rehearing Denied Aug. 18, 1977.

E. J. Rose, Bismarck, for defendants and appellants.

T. L. Secrest, Hettinger, for plaintiffs and appellees.

SAND, Justice.

Flecks, the defendants and appellants (hereinafter Flecks), appealed from a judgment for damages in favor of Gerhardts, the plaintiffs and appellees (hereinafter Gerhardts), issued by the district court of Morton County, sixth judicial district, arising out of the contract for deed between Gerhardts, the vendors, and Flecks, the purchasers, which resulted from an auction sale on the following described property:

All of Section 22; all of Section 27; Northwest Quarter of Section 34; North Half of the Northeast Quarter of Section 34; North Half of the Southwest Quarter of Section 34; Township 135, Range 82, Morton County, North Dakota.

Gerhardts gave public notice that they would sell their land to the highest bidder on a contract for deed at an auction sale on 27 November 1973. The notice, among other things, provided that to be eligible to make an oral bid the person must first have submitted a written bid, accompanied by a check in the amount of ten percent of the bid. The notice of sale contained the proviso that the Gerhardts reserved the right to reject all bids.

Adam Fleck submitted a written bid for $100.00 per acre for the sixteen hundred acres, accompanied by a check in the amount of $16,000.00. At the auction sale on 27 November, three other parties, who had submitted written bids, made oral bids on the property.

Prior to the auction sale, Fleck advised Gerhardts' attorney that his bid was conditioned upon satisfactory financial arrangements, the availability of which he could not determine until November 27th, the date of the sale, and that Gerhardts' attorney advised that this was all right, whereupon the written bid was submitted.

After the oral bidding began there was a momentary lull, at which time Mr. Fleck gave a knowing look to Gerhardts' attorney, who then called a recess. During the recess Fleck made a telephone call, after which the bidding resumed. Mr. Fleck put in bids of $1.00 increments until the bidding reached $150.00 per acre, which was his final and top bid. Immediately afterwards, Gerhardts' attorney advised Mr. Fleck that he would have to write a new check for $24,000.00, whereupon Mr. Fleck responded that he needed several days to come up with the downpayment.

The contract for deed for the property in question was dated 27 November 1973, and recited that the Flecks agreed to pay $240,000.00 for the property, with a downpayment of $24,000.00 upon the execution of the contract. Theodore Gerhardt and wife executed the contract on 29 November 1973, and Adam and Darlene Fleck executed the contract on 4 December 1973.

Gerhardt received notice from the bank, dated 17 December 1973, that the Adam Fleck check in the amount of $24,000.00 was returned for "insufficient funds." The Gerhardts then unsuccessfully tried to get the Flecks to deposit sufficient funds to cover the check. Failing in this effort, the Gerhardts placed the property up for sale again.

The second notice of sale differed from the first notice only with reference to dates and a new proviso, as follows:

"Bids on the whole acreage or any part of the acreage are invited. (This land was sold to the highest bidder on November 27, 1973; however the purchaser did not complete the sale, hence now we are reselling it.)"

At the second auction the property was sold in three parcels to different buyers. The one parcel was sold for $62,400.00; the other parcel for $103,040.00; and the third parcel for $58,240.00, making a total of $223,680.00.

Gerhardts then brought this action for damages against Adam and Darlene Fleck, resulting in the judgment of $17,320.00, from which this appeal was taken.

Flecks assigned a number of errors, but we will consider and discuss only the dispositive issues.

Flecks contend that the trial court should have required the Gerhardts to first proceed with a cancellation and rescission process under Chapter 32–18, North Dakota Century Code, and failure to do so constituted error. The trial court in its memorandum opinion stated as follows:

"He [Fleck] contends that as no notice of foreclosure or cancellation of the contract for deed was ever had and that Plaintiffs failed to comply with chapter 32–18 and as such have no cause of action for damages. This is not a case where parties for valuable consideration entered into a contract for deed. In this case no consideration was ever paid for the contract. The Defendants were required to make a down payment of $24,000.00 in order to put the contract into effect. They failed to do so. Under such circumstances chapter 32–18 pertaining to cancellation of land contracts is not applicable.

"In the present case it appears further that the Defendants after they were unable to secure the necessary financing under which they intended to make payment of the $24,000.00 returned not only their copy by also the Plaintiff's [Gerhardt's] copy of the contract for deed and the abstracts of title. They never had or were given possession of the land."

The trial court also stated:

"Chapter 9–09 pertaining to extension, rescission, alteration and cancellation of contracts does not provide or require a written notice."

One of the pertinent findings of fact made by the trial court is as follows:

"III.

"That a contract for deed dated November 27, 1973, was drawn between the plaintiffs as sellers and the defendants as purchasers, which contract provided for payment of the sum of $24,000.00 on the execution of the contract which is evidenced by the check as issued for the defendant, Adam Fleck; that after execution of the contract for deed by the plaintiffs, the original and one copy of such contract together with the abstracts of title were mailed to Attorney E. J. Rose who was the attorney for the defendants in this transaction; that several days after the date of the contract for deed the check for the down payment was presented and was returned by the bank with the notation therein, "Insufficient funds"; that the date of the return of the check as indicated by the notation on the reverse side thereof was December 13, 1973; that negotiations were then had to induce the defendant to deposit sufficient funds to make the check good but the defendants failed to make the check good; that defendants informed the plaintiffs that they could not secure the necessary financing as promised them; that thereafter, both the original and the buyers' copy of the contract together with the abstracts of title were returned

by the defendants' attorney to the attorney for the plaintiffs."

Flecks did not challenge the findings of fact either in the brief or in oral argument. This court, on review, pursuant to the provisions of Rule 52(a), North Dakota Rules of Civil Procedure, will treat the findings of fact, unless they are clearly erroneous, as the facts of the case if they are supported by sufficient evidence. Our examination of the record discloses that the findings of the court are amply supported by the evidence, and are not clearly erroneous. Therefore, pursuant to Rule 52(a), NDRCivP, the findings of the trial court will be treated as the facts of this case.

With reference to the contention of Flecks that Gerhardts should have proceeded with a cancellation process as provided for in § 32–18–01, NDCC, we will first examine the provisions, which are as follows:

"No owner of real estate, or owner of any equity therein, who shall make or execute a contract for deed, bond for deed, or other instrument for the future conveyance of any such real estate or equity therein, shall have the right to declare a cancellation, termination, or forfeiture thereof or thereunder, except upon written notice to the vendee or purchaser, or his assigns, as provided in this chapter, and such notice shall be given to such vendee or purchaser or his assigns, notwithstanding any provision or condition in any such instrument to the contrary."

Out of necessity, the provisions of § 32–18–01, *supra,* apply only if there is an operative and binding contract for deed.

We therefore need to determine what are the essential elements of a contract for deed, or, as it is known by many of the authorities, an executory contract for the sale or purchase of real property.

Thompson on Real Property (1963) Replacement Volume 8A, *Vendor and Purchaser,* § 4441, page 245, states that

". . . the executory contract imposes a duty on the vendor to sell and on the vendee to buy and creates certain legal relationships.

.    .    .    .    .

". . . In order for an agreement [executory contract] to be effective there must be a grantor capable of conveying, a grantee capable of receiving, an agreement satisfying the statute of frauds, a sufficient consideration and an interest capable of being conveyed."[1]

The same authority, at page 246, states:

"A contract to sell land is like an agreement of lease, based originally on contract law, but when executed it gives rise to definite property rights which are to be interpreted by the property law.

.    .    .    .    .

". . . The agreement is sometimes put in the form of a bond for deed, but it generally takes the form of a simple executory contract whereby the vendor agrees, for a consideration paid, or to be paid, to convey to the vendee the real estate described therein."

The basic requisites of the contract are set forth in § 9–01–02, NDCC, which provides:

"It is essential to the existence of a contract that there should be:

"1. Parties capable of contracting;

"2. The consent of the parties;

"3. A lawful object; and

"4. Sufficient cause of consideration."

This section tells us that consideration is a basic essential of a valid contract.

---

1. In the article entitled *Land Purchase Contracts in North Dakota* by Shelley J. Lashkowitz, N.D.L.Rev. (1960), Vol. 36, page 159, it is stated:

"Contracts for deed are variously referred to as 'agreements to convey', 'contracts of sale', 'contracts of sale and purchase', 'agreements for purchase and sale', 'installment sales and contracts; and 'land sale contracts.' They vary widely in form and effect, and the purchaser or prospective purchaser of land should be careful to obtain legal counsel in entering into a land purchase transaction utilizing such an instrument."

Section 9–01–03, NDCC, defines "executed" and "executory contracts" as follows:

"An executed contract is one, the object of which is performed fully. All other contracts are executory."

We have no question that the contract for deed was an executory contract.

As to the instant contract for deed, most of the requisites were met, but because of Fleck's failure to make the downpayment it did not satisfy the sufficient consideration requisite and therefore never became an operative, binding contract. The downpayment, the consideration, was an essential element of the contract. The notice of sale stated that a downpayment of ten percent was required.

The contract for deed, even though it was properly executed by the proper parties and was in writing as required by § 9–06–04, NDCC, was not binding because of lack of consideration. In addition, the contract for deed was never "delivered" to Flecks but was held by their attorney, who stated, "The contract for deed was never actually delivered to the defendant [Flecks]." Flecks neither had actual nor constructive possession of the property in question.

Under these situations and conditions we conclude that § 32–18–01, NDCC, has no application to the instant case.

■ Flecks also called attention to a portion of the contract which provides as follows:

". . . the said parties of the first part, may at their option, by written notice declare this contract cancelled and terminated . . . ."

and argued that the court ignored this provision in the contract. This portion of the contract, however, may not be taken out of context but must be read and considered in conjunction with the following provisions under which it is found:

"But should default be made in the payment of principal or interest due hereunder, or any part thereof, to be by the second parties paid, or should they fail to pay taxes or assessments upon said land, premiums upon said insurance, or to perform any or either of the covenants, agreements, terms or conditions herein contained, to be by said second parties kept or performed, the said parties of the first part, may at their option, by written notice declare this contract cancelled and terminated, and all rights, title and interest acquired thereunder by said second parties, shall thereupon cease and terminate, and all improvements made upon the premises, and all payments made hereunder shall belong to said parties of the first part as liquidated damages for breach of this contract by said parties, said notice to be in accordance with the statute in such case made and provided."

These provisions apply to situations where the contract has been in force; whereas in the instant situation the contract was never operative. There was a default which prevented the contract from becoming operational.

■ Flecks also contended that in two earlier discussions between Mr. Fleck and Gerhardt, or his attorney, an understanding or an agreement was reached to hold the downpayment check for several days to give the Flecks an opportunity to complete financial arrangements.

As to written contract, § 9–06–07, NDCC, provides:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

The contract for deed is the written instrument which occurred after the oral negotiations, but it does not reflect any of the oral agreements reached to hold the check for several days. In view of the statutory provisions, it is difficult to give serious consideration to the oral agreement, particularly in view of the fact that after the check was returned for insufficient funds continued efforts were made by Gerhardts to get Flecks to deposit sufficient funds to cover the check. We therefore conclude that § 9–

06–07 applies. See also, *Rieger v. Rieger,* 175 N.W.2d 563 (N.D.1970), and *Schue v. Jacoby,* 162 N.W.2d 377 (N.D.1968).

■ We next consider whether Gerhardts could rescind the contract for deed.

Section 9–09–02, NDCC, sets forth the conditions under which a party may rescind a contract, as follows:

"A party to a contract may rescind the same in the following cases only:

"1. If the consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, menace, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds or of any other party to the contract jointly interested with such party;

"2. If through the fault of the party as to whom he rescinds the consideration for his obligation fails in whole or in part;

"3. If such consideration becomes entirely void from any cause;

"4. If such consideration before it is rendered to him fails in a material respect from any cause; or

"5. By consent of all of the other parties."

Gerhardt had grounds for rescinding under either subsections (2), (3), or (4), or all three of them.

The rules governing rescission are found in § 9–09–04, NDCC, which provides as follows:

"Rescission, when not effected by consent or pursuant to sections 9–08–08 and 9–08–09, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

"1. He must rescind promptly upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability and is aware of his right to rescind; and

"2. He must restore to the other party everything of value which he has received from him under the contract or must offer to restore the same upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

In *Mader v. Hintz,* 186 N.W.2d 897 (N.D. 1971), the court said a contracting party having a right to rescind must comply with the statutes governing rescissions. Sections 9–09–01 through 9–09–04 NDCC, inclusive; *Schaff v. Kennelly,* 61 N.W.2d 538 (N.D. 1953); *Fedorenko v. Rudman,* 71 N.W.2d 332 (N.D.1955); and *Volk v. Volk,* 121 N.W.2d 701 (N.D.1963).

In *Volk v. Volk,* 121 N.W.2d 701 (N.D. 1963), this court held:

". . . compliance with the rules governing rescission is a condition precedent to the maintenance of an action to rescind. *Donovan v. Dickson,* 37 N.D. 404, 164 N.W. 27; *Uhrig v. J. I. Case Threshing Machine Co.,* 64 N.D. 189, 250 N.W. 922. . . . Where, as in the case before us, the action was commenced promptly and the nature of the action is such that there is nothing to restore in event of cancellation, there is no condition precedent to be performed. . . . Where the party seeking to rescind has received nothing of value there is nothing to restore and the rule does not apply. *Larkin v. Mullen,* 128 Cal. 449, 60 P. 1091; *Norton v. Rosenkranz,* 62 Cal.App. 226, 216 P. 380."

In the instant case there was nothing to restore and consequently the rule on restoration has no application here.

Consideration for the contract for deed (executory contract) in the instant case failed because the required downpayment was never accomplished.

We conclude that Gerhardts acted promptly after becoming aware that the consideration failed and was not forthcoming immediately, and that their actions were within the provisions of §§ 9–09–02 and 9–09–04, and related provisions.

Flecks contend that because there was no written memorandum pertaining to the oral transaction at the auction sale, Gerhardts

may not sue for damages because the agreement is invalid.

Section 3–05–02, NDCC, provides as follows:

"An auctioneer has authority from a bidder at the auction as well as from the seller to bind both by a memorandum of the contract whenever a written memorandum is required by any statute or by usage to make a valid contract of sale, and such memorandum must be in the form and content prescribed."

▪ There is no doubt that this section requires a written memorandum to satisfy the statute of frauds where the auction sale involves the sale of real property. See *Brey v. Tvedt*, 74 N.D. 192, 21 N.W.2d 49 (1946).

▪ We agree with Flecks as to the principle of law, but we believe they have either misconstrued the law or misplaced its application. In *Brey, supra,* the court said:

"The vendor and the bidder were both present at and for a time after the auction. They being the principal parties, could have entered into a sufficient memorandum between themselves."

This statement is a strong indication that the memorandum may be prepared and entered into between the parties themselves and that the written memorandum need not be made by the auctioneer. We are satisfied that the statute is primarily concerned that a written memorandum is made and not necessarily who prepared it or precisely when it was made, assuming it was made or executed, as the case may be, within a reasonable time after the auction sale.

▪ In the instant matter, the contract for deed was the written memorandum, and we agree with the trial court that such contract for deed satisfied the statutory written memorandum requirement.

The contract for deed, even though inoperative for lack of consideration, satisfied the written memorandum requirement for the oral agreement made at the auction sale. For that matter, any other adequate memorandum would have satisfied the statutory requirement. It is the existence of a written memorandum adequately describing and reciting the oral agreement which satisfies the statute of frauds and not whether or not the agreement has become effective or operational which may depend upon the performance of an act by one of the parties, such as making a downpayment or some other similar consideration. The executed contract for deed satisfied the statute of frauds. We must therefore reject the contention and argument of Flecks' that the sale or agreement was not supported by a written memorandum.

Flecks' failure to make the required downpayment, which was an essential element of the contract for deed, which, in turn, is the written memorandum relating back to the oral agreement at the auction sale, exposes Flecks to damages for the injuries sustained by Gerhardts as a result of the breach of contract.

Flecks contend that the trial court erred in allowing the difference between the sale of the land at the first sale and the sale of the land at the second sale to be the measure of damages.

As to damages, § 32–03–14, NDCC, provides as follows:

"The detriment caused by the breach of an agreement to purchase an estate in real property is deemed to be the excess, if any, of the amount which would have been due to the seller under the contract over the value of the property."

▪ The source note states that this provision was taken from the California Code, § 3307. The California Code has been construed to allow the difference between the contract price and the salable or market value of the land at the time of the breach, after giving the vendee credit for any sums paid. See, Annotation on measure of damages for purchaser's breach of contract to buy real property, 52 A.L.R. 1511. See also, 77 Am.Jur.2d *Vendor and Purchaser* § 489. The language of the two statutes is, for all practical purposes, identical. We are not aware of any reason why the North Dakota statute should be given a different meaning than that given to the California statute. We conclude that it has the same meaning.

Our conclusion is supplemented by the statement found in 77 Am.Jur.2d *Vendor and Purchaser* § 491, page 616, which states:

"If, however, a resale is made upon as favorable terms and under as favorable circumstances as the original sale and is made within a reasonable time and after proper notice to the purchaser, the amount is, it seems, evidence, although not conclusive, of the market value of the land for the purpose of fixing damages; and in some cases where the sale was made after due notice, the deficiency arising has been held the proper measure of damages."

■ The second sale was held promptly after the failure to deposit the necessary funds to cover the check for the downpayment. The fact that the second sale permitted bidding on parcels rather than all of the land, without a further showing, does not establish that the second sale was not as favorable as the circumstances of the first sale. The public notices and the publication of them were the same except as to the parcel bidding. It is debatable whether bidding on the whole or on parcels is more advantageous to the seller. The circumstances in each instance would be controlling and in some instances the one system would be better than the other. Here there was no evidence, but merely an argument.

■ The only evidence introduced which the trial court could have used to determine damages was the total price of the land at the first sale, in the amount of $240,000.00, and the total price for the land at the second sale in the amount of $223,680.00, a difference of $16,320.00. The trial court allowed Gerhardts damages in the amount of $17,320.00, based upon the provisions of § 32–03–14, NDCC. The evidence supports a finding of damages for Gerhardts, but not in the amount of $17,320.00, but rather in the amount of $16,320.00, which is the difference between the price of the land at the first sale and the price of the land at the second sale. We therefore conclude that Gerhardts are entitled to a judgment in the amount of $16,320.00.

■ Flecks' final argument is that even though Mr. Fleck may be liable for damages, nevertheless Mrs. Fleck should not be subject to any damages on the ground that Mrs. Fleck did not participate in any of the discussions or bidding at the sale, and that there was no showing that Mr. Fleck acted as her agent at the auction sale.

The appeal was by Mr. and Mrs. Fleck individually, which would permit either one, or both, to raise this issue. While we may agree that either Mr. Fleck or Mrs. Fleck, or both, had the right to raise the contention, we do not believe that it is well founded.

Section 3–01–08, NDCC, sets forth how a ratification may be accomplished and provides as follows:

"A ratification can be made only in the manner that would have been necessary to confer an original authority for the act ratified or, when an oral authorization would suffice, by accepting or retaining the benefit of the act with notice thereof. A ratification is not valid unless at the time of ratifying the act done the principal has power to confer authority for such an act, and ratification of part of an indivisible transaction is a ratification of the whole."

See also, 3 Am.Jur.2d *Agency* §§ 160–164, pp. 548–552.

The North Dakota Supreme Court, through Justice Paulson, in *Askew v. Joachim Memorial Home,* 234 N.W.2d 226 (N.D. 1975), quoted approvingly from the Restatement of Agency 2d § 82, page 210, which defines "ratification," as follows:

"The affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him."

The court, in substance, also held that ratification by the principal of an otherwise unauthorized act may occur either expressly or by implication because of conduct of the principal inconsistent with a repudiation of the agent's act.

The inescapable fact remains that the oral sale was consummated in a written memorandum which was the contract for deed. The contract for deed was subscribed by Mrs. Fleck, which clearly shows that she ratified the actions of her husband. No evidence was introduced which would indicate that Mrs. Fleck was misled, coerced, or otherwise required to execute the contract for deed against her will. Under this posture we may not speculate as to why she executed the contract for deed. We must assume that she executed the contract for deed of her own free will. When Mrs. Fleck placed her signature she, in effect, ratified the action of her husband. Without any further showing, she may not now claim that the husband did not act as her agent for her.

We therefore conclude that the actions of Mrs. Fleck ratified the actions of Mr. Fleck and the argument that she should not be held liable is rejected.

The judgment of the trial court is modified so as to conform with the evidence, and the amount is reduced from $17,320.00 to $16,320.00, and as so modified is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.