**UNITED BANK OF BISMARCK,**
**Plaintiff and Appellee,**

v.

**Kye TROUT, Jr. and Steven Trout,**
**Defendants and Appellants.**

**Civ. No. 910120.**

Supreme Court of North Dakota.

Feb. 4, 1992.

As Amended Feb. 20, 1992.

Gerry Gunderson (argued), of Wheeler Wolf, Bismarck, for plaintiff and appellee.

William C. Kelsch (argued), of Kelsch, Kelsch, Ruff & Austin, Mandan, for defendants and appellants.

LEVINE, Justice.

Kye Trout, Jr., and Steven Trout appeal from a county court judgment evicting them from land owned by United Bank of Bismarck [the Bank]. We affirm.

The Bank prevailed in a mortgage foreclosure action against Kye Trout, Jr., and in April 1990 received a sheriff's deed to 212 acres of ranch land in rural Burleigh County. Kye remained on the property after the expiration of the redemption period and negotiated with the Bank to lease the property. When no lease agreement could be reached, the Bank listed the property for sale with a realtor.

Dennis Collins, a friend of the Trouts from California, negotiated to purchase the property. The Bank and Collins entered into a purchase agreement, dated October 1, 1990, whereby the Bank agreed to sell the property to Collins for $155,000. The agreement required Collins to pay $46,500 as earnest money, and the parties were to enter into a contract for deed for the balance at 12% interest, with three annual payments of $45,175.

On October 10, 1990, Collins leased the property to Steven Trout and Steven's wife, Davie, for $100 per month. Steven is Kye's son. Steven and Davie moved onto the premises on December 1, 1990. In addition, Kye has apparently remained on the premises until the present time.

Although Collins executed the October 1, 1990, purchase agreement, he tendered only $30,000 of the $46,500 earnest money agreed upon. The Bank accepted his offer by signing the purchase agreement on October 9, 1990, but made a notation conditioning its acceptance upon receipt of the remaining earnest money. The Bank also sent Collins a contract for deed. A series of letters and long distance telephone calls followed, with Collins promising to tender the balance of the earnest money. On December 17, 1990, the Bank sent Collins a letter setting a deadline of December 31, 1990, for receipt of the balance of the earnest money. The letter also advised that, unless the executed contract for deed and requested funds were returned by the due date, the Bank would declare the $30,000 earnest money forfeited as liquidated damages. Collins signed and forwarded the contract for deed to the realtor, but failed to tender any additional funds. Collins never paid the remaining earnest money, and the Bank never signed the contract for deed.

The Bank thereafter declared the $30,000 forfeited and on January 14, 1991, paid the realtor its $9,300 sales commission. The Bank advised Collins of its position, but stated its willingness to complete the transaction and credit the $30,000 towards the purchase price. After further negotiations, the Bank agreed to sell the property to Collins, on slightly different terms than previously set, if Collins tendered additional funds by February 12, 1991. On February 11, Collins sent a mailgram requesting additional time to complete the transaction. The Bank refused any further extension.

On January 16, 1991, the Bank served a Notice of Intention to Evict upon Kye and Steven. On February 15, 1991, the Bank commenced this eviction action in the County Court of Burleigh County. The county court ruled that Collins had no title in the property and therefore had no interest to lease to the Trouts. Judgment was entered on March 13, 1991, evicting Kye and Steven from the property. Kye and Steven have appealed,[1] raising the following issues:

I. Did the county court have jurisdiction to decide the issue of title to real property?

II. Was Collins an indispensable party?

III. Did Collins acquire title through equitable conversion?

IV. Was the Bank required to foreclose or cancel the purchase agreement through judicial proceedings?

1. The Trouts have posted a bond and the eviction has been stayed pending this appeal.

V. Did the Bank wrongfully declare forfeiture of the $30,000?

I.

■ The Trouts assert that the county court was without subject matter jurisdiction to decide the issue of title to the real estate. The county court held that the Bank held title to the property and that title had not been transferred to Collins.

In support of their assertions, the Trouts rely upon *Goodman Investment, Inc. v. Swanston Equipment Co.*, 299 N.W.2d 786 (N.D.1980). In *Goodman,* we relied upon a since-repealed statute in noting that "if a forcible-detainer action is brought in county court of increased jurisdiction and a question of title is raised, the county court is divested of jurisdiction and the matter must be certified and transmitted to the district court of the county." *Goodman, supra,* 299 N.W.2d at 791. The relevant statute, Section 33–01–06, N.D.C.C., provided in pertinent part:

> *"Procedure when title to or boundary of real estate in issue.*—A question of title to or boundary of real property cannot be determined in a county justice court, and when such question arises upon a material issue joined as prescribed in this title, or when such question arises by controversy in the evidence as to a fact material to the determination of the issues in the action, the county justice must discontinue the trial and forthwith must certify and transmit to the district court of his county all the pleadings and papers filed with him in such action...."

Although the statute on its face applied to county justice court, we held in *Herzig v. Herzig,* 286 N.W.2d 116, 118 (N.D.1979), that it also applied to county courts of increased jurisdiction.

In *Herzig, supra,* 286 N.W.2d at 118–119, we explained the policy bases underlying the statute and questioned whether those policy bases had been eroded:

> "County courts of increased jurisdiction are courts of limited jurisdiction. They have and can exercise no powers except such as are expressly granted, or are necessarily implied from powers expressly granted, by statute. The Legislature has specifically provided that a question of title to or boundary of real property cannot be determined in a county justice court. Section 33–01–06, N.D.C.C. The apparent intent of the Legislature in enacting this statute was to prohibit county justices, who were often traditionally untrained in the law, from determining difficult legal questions of title to real property. Changes that have since taken place in our judicial system, and in the legal training and background of our judges, justify a reexamination of the need for certification of title or boundary disputes in forcible detainer actions to the district court. Accordingly, the Legislature may want to examine this statute and others which result in fragmentation of our judicial system. If an office is filled by persons admitted to practice ˙law in all of the courts of this state, especially if the office is made a full time position, and the occupant thereof is appropriately compensated, there should be no need for transfer and the person occupying that office should be able to conclude all proceedings properly commenced in that court."

The 1981 Legislature completely revised the county court structure, effective January 1, 1983, by abolishing the previous three-tiered system of county courts and creating a single county court in each county, with full-time law-trained judges. 1981 N.D.Sess.Laws Ch. 319; 1981 Report of the North Dakota Legislative Council 70 (1981); *see Matter of Estate of Binder,* 366 N.W.2d 454, 456 (N.D.1985). Chapter 33–01, N.D.C.C., was repealed, including the provision requiring transfer of cases to the district court when an issue of title was raised. *See* 1981 N.D.Sess.Laws Ch. 319, § 51. Thus, the Legislature has removed any statutory impediment to the county court's exercise of jurisdiction in an eviction action where an issue of title has been raised.

The purpose of these revisions has been to improve the county court and enlarge its

jurisdiction and powers. *South Forks Shopping Center, Inc. v. Dastmalchi,* 446 N.W.2d 440, 442 (N.D.1989); *Matter of Estate of Binder, supra,* 366 N.W.2d at 456–458. The current provision authorizing county court jurisdiction over eviction actions is Section 27–07.1–17(1)(d), N.D.C.C.:

"*Jurisdiction of county courts.* A county court of any county of this state has jurisdiction in the following types of cases:

"1. Civil cases with not more than ten thousand dollars in controversy. The jurisdiction of the county court extends to the following actions:

\* \* \* \* \* \*

"d. An action for eviction from real property irrespective of value when the amount demanded therein for rents and profits or damages does not exceed ten thousand dollars."

In addition, the eviction statute itself provides that "[a]n action of eviction to recover the possession of real estate is maintainable *in the proper county court.*" Section 33–06–01, N.D.C.C. [emphasis added].

The county court has all incidental powers necessary for the effective adjudication of those matters within its exclusive original jurisdiction. *Matter of Estate of Ridl,* 455 N.W.2d 188, 191 (N.D.1990); *Matter of Estate of Sorensen,* 411 N.W.2d 362, 364 (N.D.1987). Because the county court has been given original jurisdiction over eviction actions, it must have the incidental authority to determine title to the property involved in order to effectively exercise that grant of jurisdiction. It is generally recognized that an eviction action frequently requires resolution of questions of title. *See* 25 Am.Jur.2d Ejectment § 1 (1966). The county court's ability to carry out its jurisdictional mandate would be significantly hampered if jurisdiction could be defeated by merely placing title in issue.

We reject the Trouts' assertion that the county court may not try title to the property because the jurisdiction statute does not specifically enumerate that power. We have never expressed such a narrow view of jurisdictional grants. For example, in *Matter of Estate of Binder, supra,* 366 N.W.2d at 457–458, we held that a county court exercising its jurisdiction over trust matters could construe the provisions of a divorce settlement agreement, even though the statutory grant of jurisdiction did not specifically provide authority to decide "contract matters." Noting that interpretation of the settlement agreement was "indispensable to a determination of whether or not a trust was created," we concluded that the county court had jurisdiction to decide the issue. *Binder, supra,* 366 N.W.2d at 458. Similarly, the determination of title to the property in this case is "indispensable" in deciding which party is entitled to possession.

The Trouts assert that our opinion in *Dastmalchi, supra,* indicates a limitation upon the county court's jurisdiction in eviction actions. Dastmalchi was a tenant in a shopping mall owned by South Forks. Dastmalchi became delinquent in paying rent and South Forks sued him. In settlement of that litigation, the parties entered into an agreement whereby Dastmalchi would be allowed to move to a temporary location in the mall and would be allowed to move into a specified permanent location when it became available. Disputes over payment of rent continued, and South Forks eventually leased the permanent space to another tenant and sued to evict Dastmalchi from his temporary space. The county court denied eviction, held that South Forks had breached the agreement, and ordered that Dastmalchi be allowed to remain in the temporary space, rent-free, until the permanent rental space was made available to him.

We held that the county court had no authority to award affirmative equitable relief, in this case, specific performance of the settlement agreement, on a counterclaim to an eviction action. *Dastmalchi, supra,* 446 N.W.2d at 443. In so holding, we relied upon Sections 33–06–04 and 27–07.1–33, N.D.C.C., which provide in pertinent part:

"*33–06–04. Eviction actions not joinable with other actions—Exception—When counterclaims only interposable.* An action of eviction cannot be

brought in a county court in connection with any other action, except for rents and profits accrued or for damages arising by reason of the defendant's possession. No counterclaim can be interposed in such action, except as a setoff to a demand made for damages or for rents and profits."

"27-07.1-33. Procedure permitting pleading of cross-claims or counterclaims in excess of jurisdiction of county courts. In all civil actions instituted in a county court a defendant has the right to plead a cross-claim or a counterclaim, compulsory or permissive, in excess of the jurisdiction of the court. When the amount in controversy measured by the value of the relief sought in either a cross-claim or counterclaim exceeds ten thousand dollars or asks for affirmative equitable relief, the county court shall proceed no further with a determination of the rights of the parties provided that the pleading in excess of jurisdiction is accompanied by a motion requesting that the case be transferred to the district court of the same county as the court from which the transfer is requested. The clerk of the district court may not charge or collect an additional fee from the moving party for filing the case in district court. In the absence of a motion the cross-claim or counterclaim must be stricken and the case must proceed as though no counterclaim or cross-claim had been pleaded."

Dastmalchi had failed to move for transfer of the case to district court as required by Section 27-07.1-33. Accordingly, we held that under the statutory provisions, the county court was without authority to order specific performance of the settlement agreement. We further concluded that South Forks was entitled to a judgment of eviction as a matter of law, and we remanded to the county court.

*Dastmalchi* is clearly distinguishable from this case. The county court's judgment of eviction does not grant specific equitable relief ancillary to the eviction action. Rather, the action of the county court which the Trouts challenge was resolution of an issue inherent in the eviction action itself. This is not a case where the county court has strayed from its specific authority by deciding tangential issues improperly raised by counterclaim or cross-claim. *See* Sections 33-06-04 and 27-07.1-33, N.D.C.C. The county court in this case followed the clear directive of *Dastmalchi*: the court is to decide only those issues necessary to a resolution of the eviction action.

Our decision in this case was foreshadowed by the result in *Hansen v. Winkowitsch*, 463 N.W.2d 645 (N.D.1990). Although the jurisdictional issue was not specifically raised, we concluded that the county court had properly decided title questions in an eviction action. *See Hansen, supra*, 463 N.W.2d at 647-648.

The county court is given broad-based jurisdiction to try eviction actions by the statutory mandate of Sections 27-07.1-17(1)(d) and 33-06-01, N.D.C.C. There are no statutory limitations which would restrict the county court's authority to determine issues of title to real estate when necessary to resolve the eviction action. We conclude that the county court did not act in excess of its jurisdiction in this case.[2]

2. Much of the Trouts' argument on this issue focused not upon the authority of the county court, but rather upon the unfairness of trying title to real property in a summary proceeding, without the benefit of formal discovery. We sympathize with the difficulties faced by the parties and counsel in attempting to adequately prepare and present a defense based upon superior title within these time constraints. We note, however, that even under our prior law requiring certification to the district court when issues of title were raised in county justice court or county court with increased jurisdiction, the case proceeded in district court as an eviction action, using the same summary procedure.

*See* Section 33-01-07, N.D.C.C., *repealed by* 1981 N.D.Sess.Laws Ch. 319, § 51. In *State v. Crum,* 70 N.D. 177, 292 N.W. 392 (1940), the defendant asserted that title to real property could not be tried in an eviction action, even after the action was transferred to district court in accordance with the statute. This court concluded that the parties' respective rights and interests in the property could properly be determined in the eviction action. *State v. Crum, supra,* 292 N.W. at 394. The Legislature has balanced the competing policy concerns and has devised the summary procedure applicable to eviction actions. To the extent that the Trouts assert that an

## II.

 The Trouts assert that Collins was an indispensable party, and that the court should have continued the trial and required that Collins be joined as a party defendant.

Joinder of indispensable and necessary parties is governed by Rule 19, N.D.R.Civ. P., which states in pertinent part:

"JOINDER OF PERSONS NEEDED FOR JUST ADJUDICATION

*"(a) Persons to Be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action must be joined as a party in the action if (i) in the person's absence complete relief cannot be accorded among those already parties, or (ii) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party....

*"(b) Determination by Court Whenever Joinder Not Feasible.* If a person as described in subdivision (a)(1) or (a)(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the absent person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

Rule 19 deals with two classes of parties: necessary parties and indispensable parties. Under the rule, a "necessary" party is one in whose absence complete relief cannot be accorded among those already parties. An "indispensable" party is essentially a necessary party who cannot be made a party. Rule 19(b) provides that an action can be dismissed if there is an indispensable party. *See Stonewood Hotel Corp. v. Davis Development, Inc.,* 447 N.W.2d 286, 289 (N.D. 1989). Because there has been no showing that Collins could not have been made a party, he is not an indispensable party under Rule 19. *Stonewood, supra,* 447 N.W.2d at 289–290.

Nor is Collins a necessary party. It is generally held that, in the absence of a statute or rule specifically requiring joinder, a landlord is not a necessary or indispensable party to an eviction action against his tenant. *See, e.g., Bannard v. New York State Natural Gas Corp.,* 404 Pa. 269, 172 A.2d 306, 310 (1961); *Dailey v. Ryan,* 71 S.D. 58, 21 N.W.2d 61, 67 (1945); *Williams v. Ballard,* 722 S.W.2d 9, 11 (Tex.Ct.App.1986); 25 Am.Jur.2d Ejectment § 131 (1966). Because eviction is a possessory action, it is the person in actual possession who is the necessary party, not the person who holds title. *Bannard, supra,* 172 A.2d at 310. The tenant, however, has the right to defend based upon the strength of the landlord's title. *See* 25 Am.Jur.2d Ejectment § 20 (1966).

We conclude that Collins was not a necessary or indispensable party, and the court did not err in failing to require that he be joined as a party defendant.

## III.

 The Trouts argue that the October 1, 1990, purchase agreement was a "bind-

eviction action is not a proper setting to determine title to real estate, the argument is one for the Legislature, not this court.

ing" executory contract for sale and that Collins therefore acquired title to the property through application of the doctrine of equitable conversion.

Under the doctrine of equitable conversion, "once parties have executed a binding contract for the sale of land, equitable title vests in the purchaser and the vendor holds legal title only as security for payment of the balance of the purchase price." Black's Law Dictionary 538 (6th ed. 1990). Equity regards the realty as "converted" into personalty, and the purchase money as "converted" into realty. *Clapp v. Tower*, 11 N.D. 556, 93 N.W. 862, 863 (1903); 27 Am.Jur.2d Equitable Conversion § 1 (1966). The doctrine evolved from the equitable maxim: "that is regarded as done which should be done." *Clapp v. Tower, supra,* 93 N.W. at 863. The doctrine applies, however, only where there is a valid contract for sale which could be specifically enforced. *Henry S. Grinde Corp. v. Klindworth,* 77 N.D. 597, 44 N.W.2d 417, 425 (1950); *Clapp v. Tower, supra,* 93 N.W. at 864; 27 Am.Jur.2d Equitable Conversion § 8 (1966).

The October 1, 1990, purchase agreement required Collins to pay earnest money in the amount of $46,500. When Collins tendered only $30,000 with his offer to purchase, the Bank agreed to accept the offer when its officer signed the purchase agreement on October 9, 1990, but made a notation thereon conditioning its acceptance upon payment of the balance of the earnest money. By the express terms of the agreement, and by the Bank's conditioned acceptance, payment of the agreed-upon earnest money was a condition precedent to formation of an enforceable agreement to sell the property.

Section 9–01–11, N.D.C.C., defines a condition precedent:

"A condition precedent is a condition which is to be performed before some right dependent thereon accrues or some act dependent thereon is performed."

Section 9–01–16, N.D.C.C., provides:

"Before any party to an obligation can require another party to perform any act under it, he shall fulfill all conditions precedent thereto imposed upon himself...."

Under these statutory provisions, parties are free to place conditions precedent on the performance of their respective contractual obligations. *Bishop Ryan High School v. Lindberg,* 370 N.W.2d 726, 729 (N.D.1985). Performance of a condition precedent may be a prerequisite to existence of an enforceable contract. *Kruger v. Soreide,* 246 N.W.2d 764, 769 (N.D.1976); *Quinn Distributing Co. v. North Hill Bowl, Inc.,* 139 N.W.2d 860, 863–864 (N.D. 1966). Before a party can enforce conditional contract obligations, he must perform those requisite conditions for which he is responsible. *Bishop Ryan High School, supra,* 370 N.W.2d at 729.

Because Collins never tendered the agreed-upon earnest money, the Bank's obligations under the purchase agreement never became enforceable. The failure of the condition precedent is fatal to the existence of an enforceable contract for sale of the property. *Cf. Gerhardt v. Fleck,* 256 N.W.2d 547, 551–552 (N.D.1977) (where buyers' downpayment check was returned for insufficient funds, the parties' contract for deed, although executed by all parties, never became an operative, binding contract).

Because there was no enforceable executory contract for sale, equitable conversion does not apply. *See Henry S. Grinde Corp., supra,* 44 N.W.2d at 425; *Clapp v. Tower, supra,* 93 N.W. at 864. Accordingly, the trial court did not err in holding that Collins did not have title to the property.

## IV.

The Trouts assert that the Bank was required to foreclose or cancel the purchase agreement through judicial proceedings before seeking eviction.

The Trouts' argument assumes the existence of a valid, enforceable executory contract for sale. The statutory provisions governing foreclosure and cancellation apply only if there is an operative and binding executory contract for the sale of land. *Gerhardt v. Fleck, supra,* 256 N.W.2d at

551. Because there was no enforceable contract, there was nothing to foreclose or cancel.

## V.

■ The Trouts assert that the Bank was not entitled to retain the $30,000 as forfeited liquidated damages. They argue that the Bank cannot rely upon the forfeiture provisions of the earnest money agreement and at the same time assert that the agreement was not binding.

This is a case of the wrong party raising an issue in the wrong action. Whether the Bank has wrongfully retained the $30,000 does not affect the Trouts' right to possession of the property, which is the only proper issue in this eviction action. *See* Section 33–06–04, N.D.C.C. In addition, the Trouts are clearly not the proper party to be asserting the alleged wrongful forfeiture. If Collins wishes to pursue his right to return of the $30,000, he is free to do so in a proper action against the Bank.

The Trouts have failed to demonstrate reversible error. Accordingly, the judgment of the county court is affirmed.

ERICKSTAD, C.J., concurs.

Justice H.F. GIERKE, III, a member of the Court when this case was heard, resigned effective November 20, 1991, to accept appointment to the United States Court of Military Appeals and did not participate in this decision.

VANDE WALLE, Justice, concurring specially.

On the facts of this record, I concur with the result reached by the majority opinion. I write separately to express my concern with the issue of trying title to real property in a summary proceeding without the benefit of formal discovery. I take no issue with the advice in footnote 2 of the majority opinion that because it enacted § 33–06–02, NDCC, any argument as to that procedure is one to be presented to the Legislature. I do not, however, concede that this court is powerless to impose a different procedure should justice in the form of procedural due process so require. See Article VI, Section 3, North Dakota Constitution ["The supreme court shall have authority to promulgate rules of procedure, including appellate procedure, to be followed by all the courts of this state ...]. We have stated in Rule 35(b) of the Rules of Appellate Procedure that on appeal if it is "necessary or proper" we may order a new trial of the entire cause or some specific issue or issues and that if "in the consideration of any appeal, it becomes apparent to the supreme court that some issue involved in the case has not been tried, or if tried has not been determined, the supreme court may remand the case to the trial court for the determination of the issue ..."

Thus in the instance in which the title to real property is at issue in an eviction action and involves complicated factual and legal questions, I would not foreclose the option to require that the title to real property be tried only after adequate time has been allowed for discovery as to the factual issues and research and briefing of the legal issues. Although they were not eviction actions, if actions such as *Kim–Go v. J.P. Furlong Enterprises, Inc.*, 460 N.W.2d 694 (N.D.1990); *Furlong Ent. v. Sun Exploration & Prod.*, 423 N.W.2d 130 (N.D.1988); *Wehner v. Schroeder*, 335 N.W.2d 563 (N.D.1983), appeal after remand, 354 N.W.2d 674 (N.D.1984), *Malloy v. Boettcher*, 334 N.W.2d 8 (N.D.1983) and other "complicated" cases had been brought as eviction actions, I would not hesitate if I were a trial judge to refuse to determine the title to that real property in that procedural posture. As an appellate judge, I would not hesitate to remand for further proceedings if I believed there were issues involving the title to real property that had not been adequately tried or determined.

By analogy I note that we have previously held that a criminal action is ill-suited to a settlement of a dispute as to whether or not the necessary requirements have been met to declare a road a public road by prescription, *State v. Meyer*, 361 N.W.2d 221 (N.D.1985), and that a criminal prosecution for theft is not the appropriate means

of resolving a dispute over the ownership of crops between a cotenant in possession and a bank, *State v. Brakke*, 474 N.W.2d 878 (N.D.1991).

An eviction action in which title to the property is at issue is markedly similar to those actions, but I agree that where, as here, eviction actions in which the title to the property is either not complicated or the issue of title is advanced merely to delay the eviction action, the summary proceeding is appropriate. Where those circumstances are not present, I do not believe the defendant or the court can be required to determine the title without adequate discovery and research.

MESCHKE, Justice, dissenting.

I respectfully dissent.

Our code directs that "no owner of real estate ... who shall ... execute a[n] ... instrument for the future conveyance of any such real estate ..., shall have the right to declare a cancellation, termination, or forfeiture thereof or thereunder, except upon written notice to the vendee or purchaser, or his assigns, ... and such notice shall be given ..., *notwithstanding any provision or condition in any such instrument to the contrary*." NDCC 32–18–01. (emphasis supplied). While I concur that the county court has subject matter jurisdiction to determine questions of title to real estate, when necessary, I am less certain than the majority of this court that the county court could properly and summarily conclude that there is no enforceable contract for sale of real estate in this case.

The county court ruled:

> The purchase agreement required Collins to make a down payment. The Bank would then enter into a contract for deed with Collins. Collins paid only a portion of the down payment agreed to, and the Bank did not enter into the contract for deed. Title to the property was not transferred.

This, like the majority opinion, is no doubt a normal analysis by contract law, but I believe that it is not acceptable real estate law. Real estate law, such as NDCC 32–

18–01 determines when a contract to sell real estate is equitably enforceable.

The majority opinion states that the Bank "accepted [Collins] offer by signing the purchase agreement on October 9, 1990, but made a notation conditioning its acceptance upon receipt of the remaining earnest money." The notation said, "refer to letter to buyer for explanation on balance of earnest money and downpayment." The contemporaneous letter acknowledged receipt of Collin's check for $30,000, and went on to say:

> In any event, the Bank will agree to accept the balance of the down payment at the time you have executed the enclosed Contract for Deed and returned to the Bank. Your check in the amount of $16,605.00 should accompany the Contract for Deed along with an executed copy of the seller's closing statement.

The Bank effectively accepted a counteroffer and agreed to future payments.

The Bank's letter to Collins also recognized that Trouts would be occupying the premises for Collins:

> With regard to Mr. Kye Trout, who is presently occupying the property, at your request we have stopped our eviction proceeding with the understanding that this sale will close in the very near future. You have indicated your desire to workout some type of rental arrangement with Mr. Trout for the purpose of essentially taking care of the property until such time as you decide to move back to North Dakota. The Bank assumes no responsibility with respect to any negotiations or agreements which you may have with Mr. Trout subsequent to the Purchase Agreement.

The Bank recognized that Trouts would be in possession for the purchaser.

This letter also recognized that "closing," designated in the Purchase Agreement for October 15, would be delayed because Collins "will be out of the country for perhaps two to three weeks." Subsequent letters by the Bank to Collins on November 5 and December 17, 1990, and on January 14 and January 28, 1991, al-

lowed Collins additional time for a payment on the Purchase Agreement, and also agreed to further postpone its eviction proceedings against "Mr. Trout." In my opinion, this deal progressed further than the "failure of the condition precedent ... fatal to the existence of an enforceable contract for sale of the property" as the majority concludes. In my view, there was an enforceable contract.

Time was not essential, considering the extensions made by the Bank. Payment of nearly twenty percent of the purchase price had been accepted, with an agreement to accept future payments. The Bank knew that Trouts were in possession for the purchaser. Generally, actual possession of land by a tenant is constructive notice of the landlord's rights. 49 Am.Jur.2d *Landlord and Tenant*, §§ 277 and 278 (1970). "Unless the contract expressly so provided, a purchaser who has been let into possession and paid a part of the purchase price does not forfeit his equitable rights by a subsequent default in the payment of installments of the price." 77 Am.Jur.2d *Vendor and Purchaser* § 580 (1975). Because there was an enforceable real estate contract, I believe that it was legally erroneous for the county court to summarily cancel the contract without giving the purchaser, or his assigns—the Trouts, an opportunity to bring current or to redeem.

Summary eviction proceedings are only authorized "after the cancellation and termination of any contract for deed ... or other instrument for the future conveyance of real estate or equity therein." NDCC 33–06–01(5). Therefore, I respectfully dissent.