**GOODMAN INVESTMENT, INC.,**
**Plaintiff and Appellant,**

v.

**SWANSTON EQUIPMENT CO.,**
**Defendant and Appellee.**

**Civ. No. 9810.**

Supreme Court of North Dakota.

Nov. 21, 1980.

Paul F. Richard, of Tenneson, Serkland, Lundberg, Erickson & Marcil, Fargo, for plaintiff and appellant.

J. Gerald Nilles, of Nilles, Hansen, Selbo, Magill & Davies, Fargo, for defendant and appellee.

VANDE WALLE, Justice.

Goodman Investment, Inc. ("Goodman") appeals from a judgment entered on April 16, 1980, in Cass County Court, in favor of the defendant, Swanston Equipment Co. ("Swanston"). We affirm.

The facts involved in this appeal are not in dispute. In 1948 Goodman's predecessors in interest, Irving Goodman and Stanley Goodman, entered into a lease agreement with Swanston by the terms of which Swanston leased certain property in Cass County from the Goodmans. The lease contained a renewal provision, which was exercised by Swanston, whereby in 1958 the lease was renewed for a period of 89 years and called for Swanston to pay a rental of $100 per month. Swanston failed to pay the rent agreed upon during the months of June, July, and August 1979.[1]

The lease is silent with respect to any forfeiture provision because of nonpayment of rent.

On August 15, 1979, Goodman served Swanston with a notice to quit the premises. On August 17, 1979, Swanston tendered Goodman the unpaid rent plus interest at six percent. The tender of the rent and interest was rejected by Goodman as was the tender of the September rent, but by agreement between the parties the tender was delivered to Goodman's attorney and proper tender was acknowledged by Goodman. Swanston refused to give up possession of the premises and Goodman commenced an action in forcible detainer on August 20, 1979, by service of a summons and a complaint upon Swanston. Swanston answered, moving for dismissal of Goodman's complaint for failure to state a claim upon which relief could be granted.

A trial on the merits was held before Michael McGuire, Judge of the Cass County Court, on August 29, 1979. Both parties were afforded the opportunity to present testimony and evidence. Following the trial the court took the matter, including Swanston's motion to dismiss the action, under advisement. Subsequent to the trial and prior to April 10, 1980, Judge McGuire was appointed to and accepted the position of District Judge of the East Central Judicial District. On April 10, 1980, Judge McGuire issued his memorandum opinion dismissing Goodman's complaint. Judge McGuire concluded that the good–faith tender of the past–due rent and the proper interest within three days after the service of the notice to quit upon Swanston prevented a forfeiture of the lease and is a complete defense to an action for forcible detainer. Pursuant to the order for judgment, the Clerk of Cass County Court issued judgment on April 16, 1980.

The issues raised by Goodman on appeal are legal in nature. The first issue is whether or not, under our forcible–detainer statutes, a lessor must make a demand for rent and be refused payment prior to the maintenance of an action in forcible detainer. If we answer the first issue in the negative, a second issue is whether or not equity may relieve a lessee from a statutory forfeiture. The third issue is whether or not Judge McGuire had the jurisdiction to render a decision in the county court case after he was appointed to the district court.

---

1. The reason for failure to pay the rent was not an issue at trial and is not an issue in this appeal. According to the findings of the trial court, which are not challenged on appeal, the reason for failure to pay the rent was due to error in programming the computer which Swanston had recently acquired to maintain company business records and pay bills, including the lease rental payments on the lease in question.

## I

Insofar as the first issue is concerned, the parties have stipulated that Goodman did not make a demand on Swanston for the rent due for the months of June, July, and August 1979. Swanston's position is that Goodman must serve a notice to quit, which is the equivalent of a demand for rent, and that a tender of the rent due within three days after service of the notice to quit would abate the forcible-detainer action. Goodman, on the other hand, asserts that failure to pay rent due under a lease is a termination of the lease and that there is no statutory requirement of a demand for rent before the forcible-detainer action can be maintained.

Both parties concede that at common law a demand for payment must be made to entitle the lessor to enforce a forfeiture for nonpayment of rent. 49 Am.Jur.2d 1002, *Landlord and Tenant*, Sec. 1034. North Dakota has, however, enacted forcible-detainer statutes which are found in Chapter 33-06, N.D.C.C., and it is the meaning of these statutes which control our decision in this case.

Section 33-06-01, N.D.C.C., provides, in part, that an action of forcible detainer to recover possession of real estate is maintainable in the proper county justice court when:

> "4. A lessee, in person or by subtenant, holds over after the termination of his lease or expiration of his term, or fails to pay his rent for three days after the same shall be due."

Section 33-06-02, N.D.C.C., requires that in all cases arising under subsection 4, among certain of the other subsections of Section 33-06-01, "three days' written notice to quit must be given to the lessee, . . . before proceedings can be instituted."

Goodman argues that the notice-to-quit requirement in Section 33-06-02, in the case of failure of the tenant to pay rent, is not a demand for payment of the rent; that its purpose is simply to notify the lessee that he has three days to vacate the premises or he will be evicted by legal action and that the tender by the lessee of the rent due within the three-day time period of the notice to quit does not abate the eviction action. Swanston, of course, argues that the notice-to-quit provision is our Legislature's substitution for the demand-for-payment requirement of the common law and, because a tender of payment at common law abated the eviction action, the tender of the rent within the three-day time period of the notice to quit should have the same effect under our statutory scheme. Both parties have cited numerous cases from other jurisdictions, some of which are distinguishable on their facts or on the basis of the statutes involved therein.

In *Murry v. Burris*, 6 Dak. 170, 42 N.W. 25 (1889), the Territorial Court determined that the statute now codified as subsection 4 of Section 33-06-01, N.D.C.C., was taken directly from the State of Iowa, and that the statute now codified as Section 33-06-02 was also taken from the State of Iowa. Other parts of the Act were taken from the State of California and still other parts of the Act were unique to Dakota Territory in 1889. In *Cole v. Johnson*, 120 Iowa 667, 94 N.W. 1113, 1114 (1903), the Supreme Court of Iowa addressed the question of whether or not a demand of rent is an essential condition to the maintenance of forcible entry and detainer, stating:

> "The rule was very strict at common law, and is still observed in most states where no statutory modification has been made, that, to forfeit a lease for nonpayment of rent, demand must be made on the leased premises at or near sundown on the day when such payment falls due. . . . Without attempting now to determine just how far this rule may be abrogated by our statute, we are of the opinion that a demand should be made, *and some reasonable opportunity to make payment afforded the tenant*, before employing a summary remedy for his ejection. It is a familiar principle that forfeitures are not favored in law, and their effect will be limited by strict construction of statutes and contracts. There is no hardship in this requirement, and there may be great hardship in enforcing a technical forfei-

ture, which a simple demand might have rendered unnecessary. The rule is salutary and humane, and accords with the general policy of the law." [Emphasis supplied.]

Although the statutes of Iowa contained no requirement for a demand for payment, they did contain a requirement of a notice to quit. Sec. 4210, Iowa Code 1897.

In *Dakota Hot Springs Co. v. Young*, 9 S.D. 577, 70 N.W. 842, 843 (1897), the South Dakota Supreme Court considered statutes almost identical to those of North Dakota and, relying on construction of similar statutes in other jurisdictions, held that the South Dakota forcible–entry and detainer law abrogated the common–law rule which required a demand for the rent to be made upon the premises on the date it became due and substituted for such demand the notice to quit specified in the statute, stating:

"The notice to quit being a substitute for the common–law demand, it would seem to logically follow that a tender of payment within the three days specified in the notice to quit would prevent the forfeiture, ... The object of these provisions making the failure to pay rent a ground of forfeiture evidently was to secure and enforce the payment of rent without a resort to the old technical proceedings at common law, and hence proof of payment made by the tenant within three days after the notice to quit is served constitutes a good bar to an action to enforce the forfeiture."

The South Dakota Court went on to point out that the three–day period within which the rent was required to be paid was much shorter than in most other jurisdictions, stating:

"But in Illinois and in Massachusetts, prior to 1880, and in Nebraska, the notice is a simple notice to quit, yet the courts in those states, in construing the statute, have held that the notice to quit is equivalent to a demand, and payment made or tendered within the time specified in the notice saves the forfeiture. [Citations omitted.] No court, as far as our re-

searches have extended, has held that without a demand of rent–from the tenant in some form, a forfeiture could be predicated upon a failure to pay the same. Such a law would be so manifestly unjust, and would lead to such serious consequences, that we cannot give to our statute such a construction, unless required to do so by language clearer and more pointed than that used in the law we are now considering.... A construction, however, that makes the service of a notice to quit a demand, thereby relieving the landlord from the necessity of making the common–law demand, and which gives the tenant the three days in which to pay his rent after such demand, it seems to us, carries into effect the clear intent of the lawmaking power."

We cannot conclude that by enacting our forcible–entry and detainer statutes the Legislature intended such a radical departure from the common law wherein prior to forfeiture a demand for payment had to be made under rather strict procedures to a situation in which no demand for payment is required and no opportunity to pay the rent is permitted. Rather, we agree with the rationale of the South Dakota Supreme Court as expressed in *Dakota Hot Springs Co., supra*, that the purpose of the notice to quit replaces the demand for payment and permits the tenant to pay the rent within the three–day period contained in the notice. Goodman insists that such a construction is an act of judicial legislation; but Goodman's position would require us to conclude that our statutes provide that once a failure to pay rent has occurred and the notice to quit has been served the forfeiture of the premises is automatic within three days thereafter regardless of a tender of the rent by the lessee within that three–day period. Chapter 33–06, N.D.C.C., does not provide that failure to pay the rent results in a forfeiture. In *Durante v. Consumers Filling Station Co. of Cheyenne*, 71 Wyo. 271, 257 P.2d 347, 356 (1953), the Wyoming Court, citing *Dakota Hot Springs Co., supra*, concluded Wyoming's forcible–entry and detainer statutes were not to be con-

strued as providing for a forfeiture for failure to pay rent, stating: ·

"While we may not disregard a plain and unequivocable requirement written into our law by the legislature–no matter how harsh and unjust it might seem to us–we do not feel called upon to read into our laws that which is not there written, especially when to do so would offend against equity and good conscience."

Our construction of the purpose of the statutory notice to quit is a logical construction in the absence of an express provision for forfeiture in the forcible–entry and detainer statutes. It permits the lessee three days within which to pay the rent and does not offend against equity and good conscience.

Because of our disposition of Goodman's first issue, we need not consider the second issue raised.

## II

The last issue raised by Goodman, i. e., that Judge McGuire had no authority to decide this case after having left the position of Cass County Judge, gives us considerable concern. Section 33–01–04, N.D. C.C., provides that county justices and their courts have jurisdiction in all civil actions in which the amount in controversy does not exceed $200, except when the boundaries of or title to real estate comes in question. Subsection 4 of that section provides that, subject to these restrictions, the jurisdiction of each county justice extends to:

"4. An action for forcible detainer of real property irrespective of value when the amount demanded therein for rents and profits or damages does not exceed two hundred dollars."

Section 27–08–20, N.D.C.C., provides the jurisdiction and powers formerly vested in the justices of the peace are conferred concurrently upon a county court of increased jurisdiction. We have previously held that a county court of increased jurisdiction retains its prior county court jurisdiction and gains additional jurisdiction from the district court and from the justices of the peace. *Herzig v. Herzig*, 286 N.W.2d 116 (N.D.1979); *Kolling v. Goodyear Tire & Rubber Co.*, 272 N.W.2d 54 (N.D.1979).

The record is bare of any evidence that Judge McGuire was assigned by the presiding judge of the district or by this court to determine the matter after he became a district judge. It appears from statements by counsel for Goodman at oral argument that they were aware Judge McGuire, after having heard this case as judge of the Cass County Court, intended to decide the issues after he became a district judge. No objection was made to that procedure by counsel for Goodman or for Swanston. It was not until Judge McGuire had issued his opinion, judgment had been entered, and an appeal taken that the issue of Judge McGuire's jurisdiction to determine the matter was raised for the first time. We believe that if counsel for either party had objections to Judge McGuire's determining this matter after he left the Cass County bench to become a district judge, he should have voiced that objection immediately upon becoming aware of that fact rather than waiting until after the decision had been announced and judgment entered.[2] Nevertheless, we are aware that the subject–matter jurisdiction of Judge McGuire to determine this case may be raised at any stage of the proceeding because jurisdiction cannot be granted to a judge by consent or waiver of the parties where jurisdiction in that judge does not otherwise exist. *Sturdevant v. SAE Warehouse, Inc.*, 270 N.W.2d 794 (N.D.1978).

Swanston urges we adopt a view that a case should be decided by the judge who heard the evidence and even though that judge has resigned his position he may still complete the determination of a case undecided as of the effective date of the resignation. Swanston cites *Storrie v. Shaw*, 96

2. Such objection might have resulted in the parties' being required to retry the matter before the newly appointed judge of the Cass County Court although there appear to be few, if any factual matters in dispute.

Tex. 618, 75 S.W. 20 (1903), as support for that position.[3]

Swanston concedes that there are other jurisdictions which hold that if the judge before whom the case was tried leaves office, the appropriate remedy is a motion for a mistrial and a retrial of the case before a successor judge. See *Western Sierra, Inc. v. Ramos*, 97 Cal.App.3d 482, 158 Cal.Rptr. 753 (1979); *Reimer v. Firpo*, 94 Cal.App.2d 798, 212 P.2d 23 (1949); *Larkey Lumber & Wrecking Co. v. Byrnes*, 181 Tenn. 405, 181 S.W.2d 361 (1944). The general conclusion is that, absent statutory authorization, a judge has no authority to perform judicial functions after expiration of his term of office and that any uncompleted business is left for his successor in office. 48 C.J.S. *Judges* § 47.

We find no precedent in the Constitution and statutes of North Dakota or the cases interpreting the constitutional and statutory provisions by which we can conclude that a judge who has resigned his position has the authority or jurisdiction to decide matters which he heard prior to the date of his resignation without an order of this court appointing such judge as a temporary judge or a Supreme Court commissioner.

■ In this instance, however, Judge McGuire left the bench of the Cass County Court to assume the position of district judge in the judicial district in which Cass County is located. Judge McGuire was holding the position of district judge at the time he made the decision and order for judgment in this case. Although the county court of increased jurisdiction had jurisdiction of the forcible–detainer action, the district court also has jurisdiction of these matters. Thus, if a forcible–detainer action is brought in county court of increased jurisdiction and a question of title is raised, the county court is divested of jurisdiction and the matter must be certified and transmit-

ted to the district court of the county. Sec. 33–01–06, N.D.C.C.; *Herzig v. Herzig, supra*. Section 92 of the North Dakota Constitution provides that the district court shall have original jurisdiction of all causes except as otherwise provided by law. Prior to the adoption of the revised Judicial Article of our Constitution in 1976, Section 111 of the Constitution provided for county courts that had exclusive original jurisdiction in probate and testamentary matters. That provision, deleted by the revised Judicial Article, was held to mean there was no original jurisdiction in the district courts in those matters. *In re Edinger's Estate*, 136 N.W.2d 114 (N.D.1965). But under that constitutional provision exclusive jurisdiction over the forcible–detainer procedures, which are purely statutory, was not given to the justice court or county court of increased jurisdiction. Both the justice court Act, Chapter 33–01, N.D.C.C., and the Act governing county courts of increased jurisdiction, Chapter 27–08, N.D.C.C., provide for concurrent jurisdiction with the district courts in certain actions. This concurrent jurisdiction includes forcible–detainer actions and, as we have already noted, only the district court has jurisdiction of a forcible–detainer action where title to the property is in question.

There was no dispute as to the title of the property in this instance. The record also reflects that Judge McGuire signed his memorandum opinion as

"Michael O. McGuire
"East Central Judicial Judge
"Formerly Cass County Judge
"With Increased Jurisdiction"

and signed the findings of fact, conclusions of law, and order for judgment as

"Michael O. McGuire
"Acting Judge of Cass County Court"

The judgment was signed by the clerk of the county court. Despite these facts it is

---

**3.** Swanston has also referred us to an early decision of this court in *Company A, First Reg. N.D. Nat. Guard T. School v. State*, 55 N.D. 897, 215 N.W. 476 (1927), in which this court held that when a trial judge resigns with a case left undetermined a succeeding trial judge cannot decide or make findings in the case without

a trial de novo on all of the issues. That decision is not decisive of the issue with which we are here faced, however, because in *Company A, First Reg.*, there was no attempt by the judge who resigned to decide the case after his resignation.

apparent to us that when he issued the memorandum opinion and the order for judgment, Judge McGuire was exercising authority as a judge of the district court in which Cass County is located. That district court, and Judge McGuire as a judge of that court, had jurisdiction over forcible-detainer actions.

In *In re Edinger's Estate, supra,* this court, in holding that party litigants have the right to invoke the original equitable jurisdiction of the district court upon an appeal from an order of the county court, stated:

> "They have the legal right to agree to submit an issue of fact or law within the equitable jurisdiction of the district court for its determination, as effectively as they could do by bringing an independent action to obtain such an adjudication. The pivotal question, however, is not what the parties had the legal right to do, but what they actually did." 136 N.W.2d at 124.

Goodman, which was aware prior to the decision that Judge McGuire intended to retain jurisdiction of the action he had heard in county court and make a decision thereon, failed to make any objection to that procedure before the decision was made, made no objection to Judge McGuire after the decision was made, and raised the matter only on appeal. Swanston has not objected to Judge McGuire's jurisdiction to make an order for judgment but, rather, has supported his authority to do so.

This is not an instance in which the parties attempted to confer jurisdiction upon the trial court by agreement. Instead, when Swanston and Goodman failed to object to Judge McGuire's deciding the case after he became a district judge, they waived any objection to his exercising jurisdiction which he possessed as a district judge. Under these circumstances Judge McGuire, as judge of the district court, had jurisdiction and authority to act in this matter.

The judgment is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.