Bannard *v.* New York State Natural Gas Corporation, Appellant.

Argued November 16, 1960. Before BELL, MUSMAN-
NO, JONES, COHEN, BOK and EAGEN, JJ.

*John Sullivan,* Deputy Attorney General, with him
*Raymond C. Miller,* Deputy Attorney General, and
*Anne X. Alpern,* Attorney General, for Pennsylvania
Game Commission, appellant in No. 244 and appellee
in No. 301.

*Leroy F. Perry,* with him *F. Cortez Bell, Jr., G. Kirby Herrington,* and *Bell, Silberblatt and Swoope,* for defendant corporation, appellant in No. 301 and appellee in No. 244.

*Francis J. Carey, Jr.,* with him *James J. Prendergast,* and *Townsend, Elliott & Munson,* for plaintiffs, appellees in No. 244.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, June 26, 1961:

On July 15, 1959, William N. Bannard and twenty-five (25) other persons (Blanchard heirs) instituted an action in ejectment in the Court of Common Pleas of Clearfield County against the New York State Natural Gas Corporation (Gas Corp.) for the purpose of ejecting the Gas Corp. from its possession of the gas rights under a 153 acre tract of land[1] in Clearfield County and for the recovery of damages for loss of profits from gas removed therefrom. Preliminary objections filed to the complaint by the Gas Corp. were finally overruled on March 10, 1960.[2]

On August 27, 1959, the Pennsylvania Game Commission (Commission) petitioned to intervene in the ejectment proceeding. The petition alleged that the Gas Corp. was in possession of the gas rights as lessee of the Commission under a written lease dated March 7, 1957 (attached to the petition) and that the Commission desired to intervene "for the purpose of raising questions of jurisdiction." A rule was granted to show cause why the Commission should not be permitted to intervene and to this rule both the Gas Corp. and Blanchard heirs filed answers; the former ad-

---

[1] The Commission admittedly owns the surface of this tract of land.

[2] No appeal was taken from this ruling.

mitted the Commission's right "to intervene generally, as other parties litigant" but not for the "purpose of raising questions of jurisdiction", while the latter simply denied the right to intervene to question jurisdiction.

On October 12, 1959, the court, in a written opinion, refused the Commission's petition to intervene.[3] After reargument, the court on November 18, 1959 struck off its order of October 12, 1959 and permitted the Commission to intervene and become a party defendant under Pa. R. C. P. 2327(4) and directed that any exceptions thereto be argued on December 22, 1959. No exceptions were filed to this order.

On November 23, 1959, the Commission moved that the ejectment proceeding be held in abeyance until a pending proceeding before the Board of Property of the Commonwealth was completed.[4] This motion was never disposed of.

---

[3] The rationale of this ruling was that the lease between the Gas Corp. and the Commission was, in fact, a sale of the gas in place and the Commission, by reason of that fact, was not within the provisions of Pa. R. C. P. 2327 (providing for intervention of parties generally) since a final judgment against the Gas Corp. could not affect any legally enforceable interest against the Commission. The Court did not pass upon the question whether the intervention petition violated Pa. R. C. P. 2329(1) in that the Commission's defense was "not in subordination to and in recognition of the propriety of the action."

[4] Blanchard heirs (under the Act of April 9, 1929, P. L. 177, §1207 (71 PS §337) as amended, July 29, 1953, P. L. 1023, §1, 71 PS §337 (Pkt. Pts.)) prior to the ejectment action, filed proceedings against the Commission before the Board of Property to which proceedings the Gas Corp. was not a party. In that action, Blanchard heirs suffered a voluntary nonsuit and that action was later withdrawn.

Blanchard heirs also had previously sued the Commission and the Gas Corp. in the Court of Common Pleas of Dauphin County, 74 Dauphin 32, and that court upheld preliminary objections filed

On December 18, 1959, the Commission filed preliminary objections to the ejectment complaint which maintained that the Clearfield County court lacked jurisdiction both over the person of the Commission, i.e., it was immune from suit, and over the subject matter, the latter inferentially on the ground that the Board of Property of the Commonwealth had exclusive jurisdiction in the matter. The Gas Corp. filed preliminary objections to the objections of the Commission.

On March 10, 1960, the court entered an order sustaining the Commission's objection to the jurisdiction of the court over the Commission but overruled its objection to the jurisdiction of the court over the Gas Corp. From that order, both the Commission (Appeal No. 244) and the Gas Corp. (Appeal No. 301) have appealed.

Jurisdiction to hear and determine ejectment actions is vested in the courts of common pleas of this Commonwealth by virtue of the Act of 1836 (Act of June 16, 1836, P. L. 784, §12, 17 PS §251). Venue of ejectment actions, under Pa. R. C. P. 1052, is in, and only in, the county wherein the land lies. By virtue thereof, the Court of Common Pleas of Clearfield County has jurisdiction to entertain ejectment actions and determine questions involving title to or possession of land within its borders. The only issues here presented are whether the Clearfield County court has jurisdiction over the person of the Gas Corp. and/or the Commission.

---

by the Commission which questioned the jurisdiction of that court on the ground that the Commission was immune from suit. The court did state, inter alia (p. 35): "At the most, the Gas Company could be considered only as the tenant of the Commonwealth and under the Rules of Civil Procedure, if such a suit could be brought against the Gas Company in ejectment, it would have to be brought against the Gas Company in Clearfield County."

## Appeal of the Commission

The Commission contends that this action in ejectment actually is an action against the Commonwealth and that, as such, the action does not conform to Article I, §11 of the Constitution of Pennsylvania,[5] in that, the legislature has declared[6] that exclusive jurisdiction "to hear and determine cases involving the title to land or interest therein brought by persons who claim an interest in the title to lands occupied or claimed by the Commonwealth" is vested in the Board of Property (Board). We find neither merit in nor support for this contention.

Certain settled principles must be recognized at the outset: (1) the Commonwealth and its agencies, clothed with the immunity of the sovereign, are not subject to suit without the Commonwealth's consent and (2) the legislature has not authorized ejectment actions against the Commonwealth.

The present action in ejectment was not instituted against the Commonwealth or any of its agencies but against the Gas Corp. It is an action between private parties; a possessory action by an individual against a nongovernmental corporation. Being so, contrary to the argument of the Commission, the institution of such action, even though against a lessee of the Commonwealth, requires no consent on the Commonwealth's part.

In the absence of a change in the common law by statute, the only necessary or indispensable party to an ejectment action is the person in actual possession of the land and, where such land is under lease, it is the

[5] ". . . Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."

[6] The Act of 1929, April 9, P. L. 177, §1207, as amended by the Act of July 29, 1953, P. L. 1023, §1 (71 PS §337 Pkt. Pts.).

tenant, not the landlord, who constitutes the only necessary or indispensable party. 28 C.J.S., Ejectment, §52, p. 903. In *Losee v. McFarland,* 86 Pa. 33, this Court pertinently stated (p. 34): "Ejectment is a possessory action; hence the writ is served upon the one found in possession, rather than upon the one who may chance to have title. If the one in possession happens to be a tenant, his landlord may intervene and defend; if he does not choose so to do, and judgment be obtained against the tenant, the landlord cannot then intervene to prevent the plaintiff in the ejectment from taking possession. The possession of the tenant is the possession of the landlord; therefore the ejectment, whilst it may have no effect in determining the question of title as between the plaintiff and the lessor, does determine the right of possession: Johnson v. Fullerton, 8 Wright 466." See also: *McKinney v. Russell,* 68 Pa. Superior Ct. 128. Such a procedure works no hardship upon the landlord. Under the Act of March 21, 1772, 1 Sm. L. 370, §8 (12 PS §1512),[7] the tenant who is served with a writ of ejectment is required to notify the landlord of the instituted action, and the landlord, if he so desires and in accordance with the terms of the statutes and rules governing intervention, may then intervene and defend. However, if the landlord does not intervene and become a party to the action, the landlord is not bound by any judgment entered in the action between the third party and the tenant: Act of May 8, 1901, P. L. 142, §1 (12 PS §1553). If the landlord has a superior title to the land, he has his remedy by the usual action of ejectment: *Noyes v. Brooks,* 10 Pa. Superior Ct. 250, 253. See also: *Marko v. Mendelowski,* 344 Pa. 665, 667-668, 25 A. 2d 692.

---

[7] Pa. R. C. P. 1404 provides that this section of the Act of 1772 shall not be deemed suspended or affected by the rules governing the action of ejectment.

Neither at common law nor by statute is an eject-ment action required to be brought against the land-lord, unless the landlord be in possession, nor is a land-lord a requisite party to such action unless he desires to be made so. The fact that the Commonwealth is the landlord, as in the instant case, does not alter or vary these principles.

Our research fails to disclose any case in Pennsyl-vania wherein an action in ejectment was brought by a third person against a tenant of the Commonwealth. However, in *Dailey v. Ryan*, 71 S. D. 58, 21 N.W. 2d 61, a third person instituted an ejectment action against a tenant of the State of Nebraska seeking pos-session of certain land and damages, and praying that he be adjudged the owner in fee of said lands. It was contended that, inasmuch as the tenant's right to pos-session arose by virtue of a lease from the State of Nebraska, suit against the tenant was, in effect, a suit against the State which could not be maintained with-out the State's consent. Answering this contention, the Court said (21 N.W. 2d p. 67): "It follows that the State of Nebraska, the landlord of the defendant, is not an indispensable party to this possessory action against the defendant, and we entertain the view that if the State is not an indispensable party to such an action, it cannot be said that the action is against the State, even though it be consequently affected by the eviction of its tenant." We approve of the language, logic and result of this decision.

Even though an action of ejectment cannot be main-tained against the Commonwealth without its consent, it does not follow that an action in ejectment cannot be maintained, over the Commonwealth's objection, against the Commonwealth's tenant or lessee to deter-mine the right to possession of the land.

The Commonwealth argues that the Act of 1953[8] controls this situation. In pertinent part that statute provides: "The Board of Property shall also have jurisdiction to hear and determine cases involving the title to land or interest therein brought by persons who claim an interest in the title to lands occupied or claimed by the Commonwealth". In our view this statute is inapplicable to the instant situation. In the first place, assuming, arguendo, the 1953 statute is a consent-to-be sued statute enacted by virtue of Article I, §11 of the Constitution, such statute only applies in the event suit is brought, or must be brought, directly against the Commonwealth in which event the Board is given jurisdiction and cannot apply to a situation, such as presently presented, where the action was not brought, nor required to be brought, against the Commonwealth and where maintenance of the action does not require the consent of the Commonwealth. In the second place, neither the historical background of the Board nor the language of the 1953 statute supports the Commission's argument that the 1953 statute presently controls. Historically, the Board, prior to the 1953 statute, was limited in its jurisdiction to causes arising out of the operation of the Land Office, i.e., where there were adverse claimants of title to land originally granted by warrants or patents by the Commonwealth. See: Jones, Land Office Titles in Pennsylvania, Chapters II, X, XII (1850). Such limitation of the Board's jurisdiction is clearly enunciated in the Act of 1929, supra. The language of the 1953 amendment to section 1207 of the 1929 statute demonstrates that, while the amendment purports to enlarge or extend the Board's jurisdiction to cases wherein the

---

[8] Act of July 29, 1953, P. L. 1023, §1, 71 PS §337 (Pkt. Pts.) amending section 1207 of the Act of 1929, April 9, P. L. 177, 71 PS §337.

Commonwealth is a claimant, the Board's jurisdiction is not extended and enlarged to *all* cases which may arise but only such cases where the claims arose out of the operation of the Land Office. Moreover, even assuming, arguendo, the 1953 amendment conferred jurisdiction of the Board to cases not arising out of the operation of the Land Office, there is nothing in the 1953 amendment granting the Board *exclusive* jurisdiction. The statute states the Board "shall have jurisdiction to hear and determine cases" not that the Board shall have *exclusive* jurisdiction nor even jurisdiction to hear *all* cases. If the Commission's construction of this statute were correct a radical, novel and unusual change would be effected. However, neither the language of the statute nor the historical background of the Board and its power supports such construction of the statute.

The common pleas courts of this Commonwealth have jurisdiction to hear and determine ejectment actions between parties and the fact that the instant action is against a tenant of the Commonwealth does not alter or affect that jurisdiction. This does not mean, nor is it meant to infer, that the Commonwealth may be sued in an action of ejectment in any county court of common pleas. The Commonwealth is clothed with sovereign immunity to such actions and, in the absence of its consent to the suit or a waiver of that immunity, common pleas courts have no jurisdiction over the person of the Commonwealth. The Clearfield County court does have jurisdiction over the subject matter of this ejectment action and over the person of the Gas Corp., the tenant of the Game Commission. The order of the court overruling the Commission's objection to the jurisdiction of the court over the subject matter and the person of the Gas Corp. was proper and correct.

### Appeal of the Gas Corp.

The Gas Corp. appeals from the order of the court below allowing the Commonwealth, after its intervention, to attack the jurisdiction of the court over its person.

Although not a party to the ejectment action as instituted, the Commission elected to intervene and its right to intervene *generally* is beyond question. By virtue of Section 1 of the Act of 1915[9] (Act of May 28, 1915, P. L. 616, §1; 1919, July 7, P. L. 731, No. 294, §1, 12 PS §145), the Commonwealth has the right to intervene, and to appear, plead, prosecute, defend or appeal, as other parties litigant, in any case in which it may have an interest. There is no doubt that the Commission has an interest in the instant controversy; the only question is the effect, if any, of its intervention in this action.

The Gas Corp. contends that the voluntary intervention of the Commission and/or its conduct subsequent to the intervention constituted a general appearance, a waiver of immunity and a submission to the jurisdiction of the court.

Intervention is a procedural step by which a person not a party to an action is admitted or permitted to become a party to the action on his own application. Goodrich-Amram, section 2327-1. Intervention is utilized to prevent multifarious actions and is permitted only where the party seeking it has an interest in or will be affected by the pending litigation. It is a voluntary and discretionary action; the intervenor elects to enter into the action voluntarily and not by reason of any adverse process. A party who may be affected

---

[9] Pa. R. C. P. 2348(4) provides that this section of the Act of 1915 shall not be deemed suspended or affected by the rules governing intervention.

by litigation or who may have an interest therein is not required to intervene and, if he does not, a determination in the action is not binding upon him. In the instant case, the Commission would not have been bound by, nor would its title have been affected by, any determination between the Blanchard heirs and the Gas Corp., yet, it elected to intervene in the action.

The right to question the jurisdiction of the court over the subject matter of an action is not waived by intervention. On the other hand, there is no authority for an intervention de bene esse: the intervenor, by the act of intervention, submits to the jurisdiction of the court over his person. *Matson v. Attorney General*, 99 P.L.J. 63, 75; *Hinnershitz Cemetery Co. v. Miller*, 37 Pa. D. & C. 571; 67 C.J.S., Parties, sections 60, 70. The reason and logic for this rule is apparent. One who voluntarily submits himself to a proceeding is in no position to question the jurisdiction of the court over his person: *Henderson v. Delaware River Joint Toll Bridge Commission*, 362 Pa. 475, 491, 66 A. 2d 843; *Mozino v. Township of Upper Darby*, 42 Del. 101, 102. A person who seeks to become subject to the jurisdiction of the court by intervention may not thereafter take the anomalous position that the court was without jurisdiction to accomplish that which the intervenor asked the court to do. Cf: *Delaware River Port Authority v. Pa. P. U. C.*, 180 Pa. Superior Ct. 315, 319, 119 A. 2d 855.

These settled principles are embodied in Pa. R. C. P. 2329(1) which requires that the intervenor's claim or defense to the action be in subordination to and in recognition of the propriety of the action. While the right of the Commonwealth to intervene is based upon and controlled by the Act of 1915, rather than Pa. R. C. P. 2327, the Commonwealth, like other parties seeking intervention, is subject to these settled principles as embodied in Pa. R. C. P. 2329(1). The Com-

mission contends that this construction would be unconstitutional in that it would require the Commonwealth in order to protect its rights or interests in litigation to abrogate its sovereign immunity. This contention misconstrues the meaning, purpose and effect of intervention and is without merit.

The Act of 1915 gives the Commonwealth, and its agencies, the right and power to *intervene in any case* in which it has an interest. This statutory authority to intervene also confers upon the Commonwealth the power to waive its sovereign immunity by intervening in any action and participating thereafter as other parties litigant. The Act specifies both the type of action and the manner in which the Commonwealth may waive its immunity. If the Act were construed otherwise, i.e.,—that the Commonwealth could intervene and participate in the action and yet retain its immunity and avoid any adverse determination in the action,—such construction would completely disregard the mandate that it participate "as other parties litigant". The Act gives the Commonwealth the right to intervene generally and, in doing so, to waive its sovereign immunity. There is nothing unconstitutional in this construction; in fact, it is entirely consistent with the mandate of Article I, §11 of the Constitution.

That the sovereign immunity from suit of a state may be waived by intervention was recognized by the Supreme Court of United States in *Clark v. Barnard,* 108 U. S. 436, 2 S. Ct. 878, 27 L. Ed. 780 at 784, wherein the Court stated: ". . . The immunity from suit belonging to a State, which is respected and protected by the Constitution within the limits of the judicial power of the United States, is a personal privilege which it may waive at pleasure; so that in a suit, otherwise well brought, in which a State had sufficient interest to entitle it to become a party defendant, its appearance in a court of the United States would be a volun-

tary submission to its jurisdiction; while, of course, those courts are always open to it as a suitor in controversies between it and citizens of other states." When the Commission elected to intervene and exercised its statutory right to that end, it thereby consented to be sued, and its actions clearly constituted a waiver of any immunity from suit.

No logical reason exists ·why the Commission, seeking, on its own initiative, to enter into this litigation, should not be treated on the same status as other parties to the litigation. Like other parties litigant, it has the right to question the jurisdiction of the court over the subject matter of the litigation, but, as an intervenor, its defense or claim must be in subordination to and in recognition of the propriety of the action, and it has therefore no right to question the jurisdiction of the court over its person on any theory of immunity.

The order of the court sustaining the Commission's objection to the jurisdiction of the court over its person was in error.

Order in Appeal No. 244 affirmed and order in Appeal No. 301 reversed. Each party to pay own costs.