## Tri-Township Citizens Association v. Strausbaugh

*Frances H. DelDuca* and *Donald McPherson, 3rd,* for appellants.

*Gary E. Hartman* and *Eugene R. Hartman,* for township supervisors.

*David L. Kurtz,* Deputy Attorney General, for Commonwealth.

WEIDNER, J. (Ninth Judicial District, Specially Presiding), February 25, 1974.—Appeals have been taken in these cases from the approval of certain subdivision plans by the Supervisors of Liberty Township, Adams County, Pa. The plans involved are for Sections W, WA, RI, AD and AE in the development known as Charnita, located in Liberty Township.

Appellants are the Tri-Township Citizens Association, an unincorporated association, and their trustees ad litem, who contend that the approval of the plans was improper and request this court to reverse the approval and permanently enjoin sale and development of the lots located in the subdivision sections affected.

Following the filing of these appeals, Charnita, Inc., the corporation developing the Charnita area, and the Commonwealth of Pennsylvania were permitted to intervene in the proceedings.

On May 4, 1973, this court entered an order in the nature of a supersedeas prohibiting the sale of lots, the

issuance of permits for the erection of any building on, and the erection of any building on any lot in the subdivisions involved.

The County of Adams has now petitioned this court for permission to intervene, alleging that the action is taken in the interest of its citizens and taxpayers who would in some manner be affected by the outcome of this litigation.

## QUESTIONS PRESENTED

1. Whether the County of Adams is entitled to intervene in these cases under the provisions of the Act of May 28, 1915, P. L. 616, as amended, 12 PS §145.

2. Whether the County of Adams is entitled to intervene pursuant to Pennsylvania Rule of Civil Procedure 2327(4), in its own right or as a representative of its citizens and taxpayers.

## DISCUSSION

12 PS §145 states:

"In all cases at law or in equity, in any court or before any officer, board, commission, or other body having jurisdiction of the matter, in which the Commonwealth or any officer thereof may be a party, or in which the Commonwealth may have any interest, the Commonwealth shall have the right to intervene, and to appear, plead, prosecute, defend, or appeal, as other parties litigant; but in no case shall be required to give any bond or other security for costs or for any other purpose whatever. 1915, May 28, P. L. 616, §1; 1919, July 7, P. L. 731, §1."

It was on the basis of this statute that this court permitted the Commonwealth of Pennsylvania, through the Attorney General, to intervene in these cases.

Therefore, we must consider not only whether the County of Adams (the county) has a right at all to intervene under the statute, but also whether the prior intervention by the Commonwealth itself precludes intervention by any other agency or subordinate unit of the Commonwealth.

The Supreme Court, in Bannard v. New York State Natural Gas Corporation, 404 Pa. 269 (1960), held that the "Act of 1915 [12 PS §145] gives the Commonwealth, *and its agencies,* the right and power to intervene in any case in which it has an interest." (Italics supplied.)

That court has also regarded a county as an agency of the Commonwealth, performing governmental functions: Pennsylvania Turnpike Commission Land Condemnation Case, 347 Pa. 643 (1943).

On occasion, agencies of the Commonwealth have been permitted to intervene, as in Bannard, supra, where that permission was given to the Pennsylvania Game Commission.

But if a county is to be regarded as an agency of the Commonwealth, then that element of control over an agent which is vested in a principal must accrue to the Commonwealth, which is represented in all legal matters by its Attorney General: Act of April 9, 1929, P.L. 177, §292. Authority to intervene for the Commonwealth, its departments, boards, commissions and officers is granted to the Attorney General: 71 PS §293. Where, as here, the Commonwealth has intervened under the Act of May 28, 1915, P.L. 616, as amended, 12 PS §145, through its Attorney General, and has taken a position against intervention by the County, it would be insubordinate for the county to seek further to intervene on the basis of its agent status.

Therefore we find, without deciding whether 12 PS §145 could ever be the basis of intervention by a coun-

ty, that where the Commonwealth has intervened through its Attorney General, an agency of the Commonwealth may not intervene in the same action under the authority of that statute.

The second basis for intervention offered by the county is that provided for in Pennsylvania Rule of Civil Procedure 2327(4):

"At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules, if

". . .

"(4) the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action."

Thus the keystone of any intervention under Rule 2327(4) must be a showing of a "legally enforceable interest" which may be affected by the outcome of the case. Such an interest may exist in many forms, and its precise definition and limitation is difficult.

The note of the Procedural Rules Committee to Rule 2327(4) states: "The interest justifying intervention must be a right or liability recognized and enforceable at law or in equity as distinguished from an economic motive or interest in seeing one litigant or another prevail in the proceedings": Goodrich-Amram §2327(4).

The county has expressed a desire to intervene not only in its own right but also as a representative of its citizens and taxpayers who have legally enforceable interests. These citizens and taxpayers include persons who have purchased interests in land within the Charnita development and others outside the subdivisions. Such intervention in a representative capacity is proper, and we will consider accordingly the interests of those persons whom the county seeks to represent

in its intervention: Ackerman v. North Huntingdon Township, 425 Pa. 194 (1967).

The construction of a large development such as Charnita within a township stands to provide significant revenue for that township and for the county. With not only residential homesites but ski areas, restaurants, and other facilities, Charnita is a source of much potential income for the County and its residents. But since that income remains only potential, this cannot be a sufficient legally enforceable interest to permit intervention. Loss of potential tax revenue is not enough: Appeal of Philadelphia & Reading Coal & Iron Company, 22 D. & C. 475 (1935).

But since the adjudication of these appeals stands to affect the rights of persons owning property in and adjacent to the subdivisions affected, just as the declaration of the invalidity of a zoning order binds adjoining property owners, even those who are not parties, a right to intervene exists in those persons: Wolpe v. Poretsky, 79 App. DC 141, 144 F. 2d 505 (1944); certiori denied, 323 U. S. 777, 89 L. Ed. 621, 65 S. Ct. 190 (1944); Esso Standard Oil Co. v. Taylor, 399 Pa. 324 (1960).

The owners of interests in land within the Charnita subdivisions who have been prohibited from building upon their lots and will be bound by any future restrictions on building construction there may have the right to intervene: Tredyffrin Construction Co. Appeal, 7 Chester 153 (1955); Denny Building Corporation Appeal, 387 Pa. 311 (1956).

Even those persons owning property not immediately adjoining the Charnita area, but not too remote therefrom, might have rights allowing intervention, where the township does not fully represent them, particularly where they would be adversely affected

financially: Cassalia v. Bristol Township Zoning Board, 17 Bucks 247 (1967); Ackerman v. North Huntingdon Township, 425 Pa. 194 (1967).

If all those persons with eligibility to intervene were to seek to do so, this already complex litigation would become impossible to resolve. Therefore, it is in the interest of all concerned that those persons be represented by one party. The record shows that the Board of Supervisors of Liberty Township, from whose decision these appeals were taken, have not endeavored to represent the interests of the citizens affected, and we imply no such duty on their part to represent them. Accordingly, we find that the County of Adams may intervene in such a representative capacity.

Because no final adjudication has been made in these cases, the County's intervention is not too late: Ackerman, supra.

### ORDER

And now, February 25, 1974, at 10:30 a.m., for the foregoing reasons, the petition of the County of Adams to intervene in these appeals is granted.