INTERNATIONAL DEVELOPMENT
CORPORATION, Appellant

v.

Sherwood B. DAVIDGE and Calvery
Crary, their heirs, executors, adminis-
trators, successors, assigns and un-
known persons claiming any right,
lien title or interest by, through or
under them.

Commonwealth Court of Pennsylvania.

Argued June 6, 2011.

Decided Aug. 11, 2011.

Marc S. Drier, Jersey Shore, for appel-
lant.

Bradley C. Bechtel, Harrisburg, for ap-
pellee Pennsylvania Game Commission.

Jennifer Langan, Harrisburg, for appel-
lee Robert M. McCord.

Andrew K. Fletcher, Pittsburgh, for ap-
pellee Sherwood B. Davidge.

BEFORE: LEADBETTER, President
Judge, and LEAVITT, Judge, and
BROBSON, Judge (P).

OPINION BY Judge LEAVITT.

International Development Corporation
(International Corporation) appeals an or-
der of the Court of Common Pleas of the
44th Judicial District, Wyoming County
Branch (trial court) dismissing its action to
quiet title to certain oil, gas and mineral
rights located under land owned by the
Pennsylvania Game Commission. The tri-
al court held that the Board of Property
has exclusive jurisdiction to adjudicate title
in the mineral rights in question because
the Game Commission asserts title to
these mineral rights. Discerning no error
in the trial court's decision, we affirm.

In August 2009, International Corpora-
tion filed a complaint to quiet title in cer-
tain oil, gas and mineral rights, which was
followed in October 2009 with an amended
complaint. The heirs of Sherwood Da-
vidge and Calvery Crary filed preliminary
objections to the amended complaint, as-
serting that they owned the mineral rights
in question. The Thomas Family Trust
filed a "response" to the amended com-

plaint, asserting that Davidge and Crary exchanged their mineral rights for stock in a corporation that later went bankrupt. The Trust purchased the assets of the bankrupt corporation, including the mineral rights formerly owned by Davidge and Crary and now claimed by the plaintiff, International Corporation.

The Game Commission and the Treasury Department [1] intervened in the quiet title action and filed preliminary objections challenging the trial court's subject matter jurisdiction. Specifically, they argued that the Board of Property has exclusive jurisdiction over real property disputes involving land occupied or claimed by the Commonwealth. The Game Commission separately contended that oil, gas and mineral rights are not real property interests that can be litigated in a quiet title action.

There is no dispute over the Game Commission's ownership of the surface land in Wyoming County located above the mineral estate that is the subject of International Corporation's quiet title action. A deed dated February 11, 1921, conveyed this surface land from Central Pennsylvania Lumber Company to the Game Commission.[2] The 1921 deed expressly reserved "unto the proper owners thereof all oil, gas[,] coal and other minerals ... as excepted and recorded in prior deeds" and excluded these mineral rights from the conveyance to the Game Commission. Reproduced Record at 8 (R.R. ——). A prior deed, dated February 27, 1894, conveyed that same land from Sherwood Davidge

and Calvery Crary, along with their wives, to Union Tanning Company. The 1894 deed reserved the oil, gas and mineral rights in Davidge and Crary. This is where the factual dispute begins.

International Corporation asserts that Davidge and Crary conveyed their reserved oil, gas and mineral rights to the United States Leather Company, the parent company of the Union Tanning Company, in exchange for stock at the time of the companies' reorganization. According to International Corporation, United States Leather Company later conveyed the mineral rights to another party, who, in turn, further conveyed the mineral rights. The final purchase was made by International Corporation. International Corporation cannot confirm the transaction by which Davidge and Crary exchanged their mineral rights for stock, explaining that the records of that particular transaction have been lost.

The Trust agrees that Davidge and Crary conveyed their oil, gas and mineral rights to United States Leather Company, leaving it the owner of both the surface and mineral estates. United States Leather Company conveyed the surface estate to Union Tanning Company, which later conveyed the surface estate to the Game Commission. However, the Trust maintains that the mineral estate was retained by United States Leather Company. When the Trust purchased the assets of United States Leather Company, it acquired the

---

1. The Treasury Department intervened because it serves as the custodian of unclaimed property in the Commonwealth pursuant to the Commonwealth's Disposition of Abandoned and Unclaimed Property Act, Act of April 9, 1929, P.L. 343, added by Section 5 of the Act of December 9, 1982, P.L. 1057, *as amended*, 72 P.S. §§ 1301.1–1301.29 (Unclaimed Property Act). The Treasury Depart-

ment argues that should the Board of Property determine that the Game Commission does *not* own the mineral estate, then the Treasury Department claims ownership because the mineral estate is abandoned or unclaimed.

2. The deed is dated February 11, 1921, and recorded in Wyoming County Deed Book 94, at page 313, on March 25, 1931. R.R. 1–9.

mineral estate, title to which is the subject of the quiet title action.

The heirs of Davidge and Crary assert that they own their ancestors' interests in the oil, gas and mineral rights, pointing out that there is no public record of these rights ever having been transferred to anyone. They note that the Game Commission's deed of title expressly reserved the oil, gas and mineral rights to Davidge's and Crary's heirs and assigns.

The Game Commission, the undisputed owner of the surface estate, acknowledges that any reservations of mineral rights established in prior deeds were expressly preserved in its 1921 deed. Nevertheless, the Game Commission also lodges the contradictory, and somewhat vague, claim that its deed did not exclude mineral rights because the deed conveyed the remainder and reversion interests of the grantor. The Game Commission argues that the reversion interests include the mineral estate. Alternatively, the Game Commission asserts that it owns the oil, gas and mineral rights by adverse possession because it has exercised exclusive control over the surface estate since 1931.

The Treasury Department asserts that regardless of which party's claim to the mineral rights prevails, it has the present right to administer the oil, gas and mineral rights under the Unclaimed Property Act. Davidge died in 1911, and Crary died in 1929. The Treasury Department notes that the oil, gas and mineral rights were not included in the wills of either Davidge or Crary. If they had owned these mineral rights at the time of their respective deaths, then the mineral rights passed to their heirs and, after remaining unclaimed for seven years, were subject to escheat to the Commonwealth. Likewise, the Treasury Department challenges the claims of the Trust and International Corporation as lacking the requisite documentation. The Treasury Department considers the oil, gas and mineral rights in question to be abandoned and thereby asserts custody under the Unclaimed Property Act.

The trial court sustained the jurisdictional preliminary objections of the Game Commission and the Treasury Department. It dismissed International Corporation's amended complaint on June 30, 2010, holding that disputes over interests in real property occupied or claimed by the Game Commission must be heard by the Board of Property. The trial court based its holding on the Administrative Code of 1929, which states, in relevant part, as follows:

> The Board of Property shall also have jurisdiction to hear and determine cases involving the title to land or interest therein brought by persons who claim an interest in the title to lands occupied or claimed by the Commonwealth.

Section 1207 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 337. Because the Game Commission asserts an interest in the mineral estate in question, the trial court held that the Board of Property had jurisdiction.[3]

The trial court did not address the Game Commission's argument that a quiet title

---

**3.** The trial court also found *Stair v. Pennsylvania Game Commission,* 28 Pa.Cmwlth. 457, 368 A.2d 1347 (1977), to be instructive. In *Stair,* this Court held that the Board of Property had jurisdiction to determine the ownership of culm banks located on Game Commission land. This Court reasoned that should private ownership of the culm banks be prov-

en, the private owners would require an easement to enter the Game Commission's land to remove their property. The trial court reasoned that should a private party prove ownership of the mineral estate, that party will need access onto the Game Commission's land to be able to extract the oil and gas.

action was not the proper vehicle to settle a dispute over ownership of oil, gas and mineral rights. Once it held that it lacked jurisdiction, the trial court reasoned that it was not necessary, or possible, to decide the Game Commission's demurrer that mineral rights are not real property.

International Corporation appealed the trial court's order to the Superior Court, and the heirs of Davidge and Crary cross-appealed. The Superior Court consolidated the appeals and transferred the matter to this Court. Upon reading the trial court's Rule 1925(a) Opinion, however, the heirs withdrew their cross-appeal, explaining that

> in light of the Commonwealth's admitted ownership of the surface rights to the land in question, the trial court's holding was plainly correct that the Board of Property has exclusive jurisdiction to hear the parties' dispute over the ownership of the oil, gas, and mineral rights.

Davidge Brief at 4.

 On appeal,[4] International Corporation presents one issue for our consideration: whether the Board of Property has exclusive subject matter jurisdiction to decide ownership of the mineral estate at issue. International Corporation asserts that the trial court can determine ownership of the mineral rights in question because the Game Commission was not sued and was not required to be sued. Further, it argues that the Game Commission lacks title or any cognizable claim to the mineral estate that happens to be located under its land. The Trust agrees that the Game Commission has no interest in the mineral rights at issue deriving from its ownership of the surface estate. It also argues that

the mineral rights have not been abandoned and, therefore, the Treasury Department's "interest" did not divest the trial court of jurisdiction.

The remaining parties, the Game Commission, the Treasury Department and the heirs of Davidge and Crary, request this Court to affirm the trial court's decision. The heirs believe that the Game Commission's claim to the mineral estate is tenuous at best. However, they have concluded that the mere claim to real property by a Commonwealth agency, no matter how weak, is enough to vest the Board of Property with jurisdiction. The Game Commission also responds that, in any case, the complaint was properly dismissed because a quiet title action is not the appropriate vehicle for adjudicating the ownership of oil and gas, which concerns, according to the Game Commission, not real property but energy.

International Corporation asserts that the Board of Property lacks jurisdiction because the Game Commission's ownership of the surface estate is irrelevant to the mineral estate claimed by International Corporation. The only persons with cognizable claims to the mineral estate are private persons. In support, International Corporation relies upon *Bannard v. New York State Natural Gas Corporation*, 404 Pa. 269, 277, 172 A.2d 306, 311 (1961), which established that jurisdiction lies in the Board of Property "only in the event that suit is brought, or must be brought, directly against the Commonwealth." The Supreme Court held that the Game Commission's intervention in an ejectment action brought against its tenant did not divest the common pleas court of jurisdic-

---

4. Where a trial court has sustained preliminary objections, this Court's scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *In re Estate of Bartol,* 846 A.2d 209, 213 (Pa.Cmwlth.2004). Further, when considering preliminary objections, we admit as true all well-pled facts and inferences reasonably deducible. *Id.*

tion. As in *Bannard,* International Corporation asserts that its action involves a title dispute among private parties, *i.e.,* International Corporation, the Davidge and Crary heirs, and the Trust.

The Game Commission responds that this is not a title dispute among private parties because it has claimed an interest. The Game Commission owns and occupies the surface estate, and it claims ownership of the oil, gas and mineral rights under this land. It bases its ownership claim on language in the 1921 deed, which states:

> [B]ut hereby conveying all interest of the above named grantor, its successors and assigns, in possession, remainder, or reversion in said oil, gas coal and other minerals in, under and upon [the property described in the complaint], the intention of the grantor being not to make any additional reservations.

R.R. 8.

We begin with *Bannard,* which concerned an action in ejectment brought against a Game Commission tenant, *i.e.,* a gas corporation that had leased the mineral rights to gas lying under Game Commission land. The Supreme Court rejected the Game Commission's contention that the Board of Property had exclusive subject matter jurisdiction. The Supreme Court reasoned that the tenant, not the landlord, was the appropriate defendant in an ejectment action. Neither common law nor statute required an action in ejectment to be brought against the non-possessory landlord.[5] Further, the action did not affect the Commonwealth's title to the mineral rights. For these reasons, the Supreme Court rejected the Game Commission's argument that its intervention

required the matter to be transferred to the Board of Property.

*Bannard* is distinguishable because in that case the Game Commission's ownership of the mineral estate was not in dispute. By contrast, here, the Game Commission asserts title to the oil, gas and mineral rights, but that claim is disputed by multiple parties. Under *Bannard,* mere intervention by the Game Commission agency is not enough to divest a court of common pleas of jurisdiction, but that was in a case where the court's holding would not affect the Commission's title to the mineral estate. Here, the Commission's disputed claim to the mineral estate will be adjudicated.

The other cases offered by International Corporation are also distinguishable. It cites *Moore v. Department of Environmental Resources,* 129 Pa.Cmwlth. 628, 566 A.2d 905 (1989), where this Court reversed the Board of Property's order in a quiet title action and resolved a dispute over ownership of a mineral estate in favor of a private party and against the Commonwealth. International Corporation also cites to *Kister v. Pennsylvania Fish Commission,* 77 Pa.Cmwlth. 430, 465 A.2d 1333 (1983), where this Court held that the Board of Property had jurisdiction to determine the exact nature and extent of an interest in surface and mineral rights that had been the subject of a condemnation proceeding. Finally, it cites *Krulac v. Pennsylvania Game Commission,* 702 A.2d 621 (Pa.Cmwlth.1997), where a landowner brought an ejectment action against the Game Commission and sought damages caused by its trespass. We held that the Board of Property had exclusive juris-

---

**5.** Normally, an ejectment action is initiated by the landlord against the tenant. Here, the action was brought by third parties, presumably other owners of mineral rights, claiming that the tenant, New York State Gas Corpora-

tion, was causing them a loss of profit. They sought removal of the tenant and damages. The Supreme Court explained in *Bannard* that third party ejectment actions are rare, but cognizable.

diction over the ejectment action, but the trial court had exclusive original jurisdiction over the claim for damages.

These cases do not advance International Corporation's position. Each case involved a real property dispute between the Commonwealth and a private party, which is the case here. Notably, the Commonwealth was not always successful in these cases. Jurisdiction is founded upon the Commonwealth's assertion of a claim in real property, not its success.

The trial court's decision is also consistent with this Court's recent holding in *Delaware Avenue, LLC v. Department of Conservation and Natural Resources*, 997 A.2d 1231 (Pa.Cmwlth.2010), where we held that the Board of Property has exclusive jurisdiction to determine title to newly formed land along the Delaware River that was claimed both by private property owners and by the Commonwealth. In this case, it is title to a mineral estate that is claimed both by private parties and by the Commonwealth. Again, we hold that this dispute belongs in the Board of Property.

For the foregoing reasons, the order of the trial court is affirmed.[6] The matter is remanded to the trial court, with direction to transfer the record in this matter to the Board of Property in accordance with Section 5103 of the Judicial Code.[7]

## ORDER

AND NOW, this 11th day of August, 2011, the order of the Court of Common Pleas of the 44th Judicial District, Wyoming County Branch, dated November 12, 2010, in the above-captioned matter is hereby AFFIRMED. The matter is REMANDED to the trial court solely for the purpose of transferring the record in this matter to the Board of Property.

---

6. Because of our disposition, we do not address the Game Commission's argument that a quiet title action is not the appropriate vehicle for determining ownership of a mineral estate. They claim that oil and gas is not real property but "more like energy. You can certainly feel the wind, but you cannot own it." Game Commission Brief at 12. First, this issue was not decided by the trial court once it decided it lacked subject matter jurisdiction. Second, the issue is antithetical to the Game Commission's first issue, *i.e.*, that its interest in the mineral estate vests the Board of Property with jurisdiction.

For the same reason, we do not address the Treasury Department's contention that it has an interest in this matter pursuant to the Unclaimed Property Act because the oil, gas and mineral rights are abandoned and unclaimed property. The trial court properly concluded that this matter is subject to the Board of Property's jurisdiction because the Game Commission claims ownership of the oil, gas and mineral estate located under its surface estate.

7. Section 5103 of the Judicial Code states, in pertinent part:

(a) General rule.—If an appeal or other matter is taken to or brought in a court or magisterial district of this Commonwealth which does not have jurisdiction of the appeal or other matter, the court or magisterial district judge shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper tribunal of this Commonwealth, where the appeal or other matter shall be treated as if originally filed in the transferee tribunal on the date when the appeal or other matter was first filed in a court or magisterial district of this Commonwealth....

\* \* \*

(d) Definition.—As used in this section "tribunal" means ... the Board of Property ... and any other similar agency.

42 Pa.C.S. § 5103.