J-S45016-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 PARTICIPATION TRUST | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICAH SOLOMON AND OCCUPANTS | : | |
| | : | No. 824 EDA 2020 |
| Appellants | : | |

Appeal from the Order Entered January 28, 2020,
in the Court of Common Pleas of Montgomery County,
Civil Division at No(s): No. 2019-18944.

BEFORE: BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.:        **FILED FEBRUARY 10, 2021**

In this ejectment action, Micah Solomon appeals, *pro se*, from the order granting summary judgment and a writ of possession to U.S. Bank Trust, N.A., for the townhouse where he and his family live. We vacate the judgment in favor of the Bank and dismiss this case for lack of subject-matter jurisdiction, without prejudice for the Bank to refile this suit with all the indispensable defendants joined as named parties.

Mr. Solomon and his family occupy a townhouse in a Montgomery County gated-community, known as Breyer Woods. The Solomons have the keys to the premises, a code to open the communal gate, and access to the property's mailbox. In July of 2019, U.S. Bank Trust, N.A., filed this action to eject Mr. Solomon and all other unnamed "Occupants" from the property. The sheriff served only Mr. Solomon.

To support its claims of ownership and right to remove the Solomons, the Bank produced an August 21, 2017 deed granting it whatever interest in the property Bayview Loan Service, Inc. once possessed. According to the Bank, Bayview Loan acquired title at a sheriff's sale following a foreclosure. *See* Bank's Brief at 5 (citing ***Bayview Loan Servicing, LLC v. Richardson***, Civ. Doc. No. 2012-13958 (C.P. Montgomery 2016)). In September of 2017, the Bank recorded its quitclaim deed from Bayview.

In Mr. Solomon's responsive pleading, entitled "Answer to Plaintiff's Complaint, Preliminary Objections, and New Matter," he admitted to living in the townhouse with other, unidentified members of his family. He then alleged a third-party, Pegasus General Contractors Inc., transferred title to him by a "Fee Simple Deed." Solomon's Answer at 2. According to Mr. Solomon, he had no dealings with the Bank. He "dealt strictly with [Pegasus], who presented [him] with keys, an agreement for possession, occupancy, and directions to change the utilities [to his] name, and further authorized [his] immediate family to occupy said premise." *Id.* Mr. Solomon claims Pegasus also gave him "a digital code for entrance to the front gate and mailbox." *Id.*

In that pleading, Mr. Solomon also raised preliminary objections to the court's personal and subject-matter jurisdiction. *See* Solomon's Answer at 3. One of those preliminary objections asserted the trial court "may not exercise jurisdiction over the objection of a party [under Pennsylvania Rule of Civil Procedure] 1028(5), for lack of capacity to sue, non-joinder of a necessary party . . . ." *Id.* He claimed the Bank made no "mention of a very important

and necessary party, [*i.e.,*] Pegasus General Contractors Inc., who[se] involvement in this case is so intricate to the outcome of the case, it would be an injustice to not include the party." *Id.*

In New Matter, Mr. Solomon averred the Bank signed a sales agreement for the property with Pegasus. He ultimately claimed the right to occupy the townhouse by virtue of the Bank's sale to Pegasus.[1] But he attached neither a deed nor a sales agreement to his Answer and New Matter to prove the alleged transfer from the Bank to Pegasus. Mr. Solomon stated that the local police seized his deed to the townhouse during a search of the property. *See id.* at 2.

The Bank filed a Reply to the New Matter. It "admitted that there was failure of consideration between [the Bank] and Pegasus General Contractors, Inc., because the checks tendered by Pegasus General Contractors, Inc. were returned by the issuing banks." Bank's Reply to New Matter at 4. Because Pegasus's checks bounced, the Bank claimed it "remains the owner of the property and is entitled to immediate possession." *Id.*

The case then took several strange turns. First, the trial court never entered an order ruling upon Mr. Solomon's preliminary objections, including those challenging its jurisdiction over the subject matter.

Also, a docket entry following the Reply to New Matter, for September 27, 2019, was listed as a "Correction: [Filing #] 5 was voided from the Docket

---

[1] Mr. Solomon raised other defenses irrelevant here, and he also alleged Civil Rights Violations by the local police. *See* Solomon's Answer at 4-6.

because the Defendants are not a party to the action." Prothonotary's Docket Entry Seq. #6. Apparently, the former Prothonotary of Montgomery County struck this case's fifth filing from the record.[2] Below the Docket Entries there is a "Voided Docket." There, the prothonotary listed a September 27, 2019 entry of appearance by Michelle Jackson as "addl defts not parties to case." Voided Docket Entry #1.

Despite Mr. Solomon's preliminary objections still being outstanding, the Bank filed a Motion for Summary Judgment on December 10, 2019. At the time, Mr. Solomon was incarcerated in the Montgomery County jail, but the record does not reflect why he was imprisoned.[3] He therefore mailed a motion to amend his pleadings and to request more time to respond to the Motion for Summary Judgment. The prothonotary's filing clerk received Mr. Solomon's

_____

[2] The current Prothonotary of Montgomery County, Noah Marlier, Esquire, took office on January 8, 2020. Thus, these procedural anomalies in no way reflect upon him.

[3] *See* Exhibit "A" of Solomon's Reformatted Motion (Envelope from the Office of the Prothonotary, post-marked 1/7/2020, to Mr. Solomon at "MCCF" — *i.e.*, the Montgomery County Correctional Facility). The prothonotary's envelope to Mr. Solomon also listed his address as the Montgomery County Correctional Facility:

> 60 Eagleville Road
> Eagleville, PA 19403

County of Montgomery, https://www.montcopa.org/496/Correctional-Facility (last visited November 3, 2020).

mailed motion within 30 days of the Motion for Summary Judgment.[4] However, she declared his motion void on January 6, 2020. **See** Voided Docket Entry #2.

The filing clerk wrote, "filings cannot be accepted in the form of a letter, all filings must be in legal format[.]" **Id.**; **See also** Exhibit "A" of Solomon's Reformatted Motion (Letter from prothonotary to Mr. Solomon, declaring that "flings cannot be accepted in the form a letter, all filings must be in legal format[.] Forms & Procedures can be found @www.montcopa.org/prothy[.]") The filing clerk's rejection letter cited no rule of procedure, no administrative order of court, and no precedential authority.

Upon receiving the rejection letter, Mr. Solomon redrafted his motion to conform to the prothonotary's stylistic mandates and mailed his reformatted motion to the courthouse.[5] The prothonotary docketed this motion on January 27, 2020. The next day, the prothonotary issued a rule for the Bank to answer Mr. Solomon's reformatted motion to amend his pleadings and for more time to respond to the summary-judgment motion.[6] The trial court simultaneously

---

[4] Mr. Solomon relates in his appellate brief that his wife re-mailed the motion for summary judgment to him in the county jail. Also, the record does not reflect on what date the prothonotary received Mr. Solomon's "voided" motion, but the filing clerk noted its existence on the "Voided Docket" on January 6, 2020, which was 26 days after the Bank moved for summary judgment on December 11, 2020. Thus, the prothonotary received the "voided" motion within 30 days of the Motion for Summary Judgment.

[5] The date of that mailing does not appear in the record.

[6] The record does not indicate how the prothonotary had the authority to issue a Rule to Show Cause.

entered an order granting summary judgment to the Bank, partially because it believed that Mr. Solomon had not replied to the Bank's Motion for Summary Judgment within 30 days.

A few weeks later, the Bank answered Mr. Solomon's motion. It argued he only had 30 days from the date that the Bank sought summary judgment to respond — *i.e.*, until January 10, 2020 — and that his reformatted motion was untimely. The Bank admitted it "received a copy of a letter addressed to the [trial court] requesting an extension of time to respond to the Motion for Summary Judgment." Bank's Response to the Reformatted Motion at 2. But the Bank told the trial court, "This 'letter motion' does not appear on the docket, and it is unclear if it was 'filed.'" *Id.* It then accused Mr. Solomon of delaying 16 days "after learning his 'letter motion' was rejected to file the instant motion on January 27, 2020." *Id.*

The Bank asked the trial court to deny Mr. Solomon's request for more time as moot, because the court had granted summary judgment. Four days later, before the trial court could rule on Mr. Solomon's reformatted motion or the Bank's response, the Bank had the prothonotary enter judgment in its favor. The prothonotary also issued a writ of possession to the Bank.

Mr. Solomon then filed this timely appeal.

The following week, the trial court ordered him to submit a Pa.R.A.P. 1925(b) Statement. He complied. That court also entered an order denying Mr. Solomon's reformatted motion. The court opined that "it no longer [had] jurisdiction to rule on [that] motion, because it raises issues related to [the

- 6 -

Bank's] Motion for Summary Judgment, which was already granted . . . and which is currently pending appeal." Trial Court Order, 3/6/2020, at 1 n.1 (citing Pa.R.A.P. 1701(b)). The trial court then filed its 1925(a) Opinion.

Mr. Solomon raises five issues on appeal. They are as follows:

1. Did the trial court have jurisdiction to entertain the action . . . ?

2. Did the trial court abuse its discretion and/or commit a clear error of law by granting [the Bank's] Motion for Summary Judgment, while [Mr. Solomon's] Motion to Amend His Pleadings and for an Enlargement of Time to File a Response was docketed and Rule to Show Cause had been docketed . . . ?"

3. Did the Prothonotary's Office and trial court deny a prisoner meaningful access to the court and due process of law by rejecting [Mr. Solomon's] letter motion asking the court's leave to amend his pleadings and for an enlargement of time to file an answer to [the Bank's] Motion for Summary Judgment and by disregarding [Mr. Solomon's] pleadings and Reformatted Motion . . . ?

4. Did the trial court abuse its discretion and commit error of law by granting [the] Motion for Summary Judgment, as a matter of law . . . ?

5. Did the trial court and [the Bank] violate the service requirements of the Pa. Rules of Civil Procedure by continuing to serve [Mr. Solomon] at [his] home address, when it was a matter of public record that [he] was in the custody of the Commonwealth of Pennsylvania?

Solomon's Brief at 5-6.

We address only the first issue, because it renders all the others moot. Mr. Solomon asserts that the trial court lacked subject-matter jurisdiction,

because Pegasus General Contractors, Inc. is an indispensable party. We disagree with that assertion; nevertheless, we conclude that the Bank failed to join all of the indispensable parties. Thus, the trial court should have sustained Mr. Solomon's preliminary objection to subject-matter jurisdiction and dismissed the Bank's complaint without prejudice.

Mr. Solomon claims the Bank failed to perfect the trial court's subject-matter jurisdiction over this case. *See* Solomon's Brief at 11-12. Because he thinks the Bank sold its title for the townhouse to Pegasus, Mr. Solomon contends the grant of summary judgment is "an attempt to emasculate Pegasus General Contractors, Inc. and its owners of their right to notice and opportunity to be heard before the judicial power of the Commonwealth is used to take their property." *Id.* at 16.

The trial court acknowledged Mr. Solomon's argument that the action is precluded due to failure to join a necessary party. However, it did not address that issue in its 1925(a) Opinion.

Our "standard of review in determining whether a court has subject-matter jurisdiction is *de novo*, and the scope of review is plenary." ***Commonwealth, Office of Atty. Gen. ex rel. Corbett v. Locust Twp.***, 968 A.2d 1263, 1269 (Pa. 2009). Notably, "lack of subject-matter jurisdiction is a non-waivable issue, which may be raised by the parties at any stage of the proceedings and can be raised by the appellate courts *sua sponte*." ***Weir v. Weir***, 631 A.2d 650, 653 (Pa. Super. 1993) (citation omitted).

"Persons having only a joint interest in the subject matter of an action must be joined on the same side as plaintiffs or defendants."  Pennsylvania Rule of Civil Procedure 2227(a).  If such a person "refuses to join, he or she shall, in a proper case, be made a defendant or an involuntary plaintiff when the substantive law permits such involuntary joinder."  Pa.R.C.P. 2227(b).  Thus, "absence of an indispensable party goes absolutely to the court's jurisdiction.  If an indispensable party is not joined, a court is without jurisdiction to decide the matter . . . the failure to join an indispensable party cannot be waived."  **Hart v. O'Malley**, 647 A.2d 542, 549 (Pa. Super. 1994) (citations omitted).

This is an ejectment action.  As such the only issue for the trial court to resolve was whether Mr. Solomon and the other occupants of the townhouse were lawfully occupying it.  The Supreme Court of Pennsylvania has held that "the only necessary or indispensable party to an ejectment action is the person in actual possession of the land . . . ."  **Bannard v. New York State Nat. Gas Corp.**, 172 A.2d 306, 310 (Pa. 1961).  If the person in possession has a lease for the premise, "it is the tenant, not the landlord, who constitutes the only necessary or indispensable party."  **Id.**

Unlike an action to quiet title, where anyone with an ownership interest would be in jeopardy of losing her interest in the *res*, a person who is not in possession has nothing at risk in an ejectment action.  **See**, **e.g.**, **Hartzfeld v. Green Glen Corp.**, 552 A.2d 306, 310 (Pa. Super. 1989) (stating that, in a quite title action, "all parties who claimed title to the property at issue must

- 9 -

be joined as indispensable parties.") If the Bank had sought quiet title, then Pegasus might have an interest in the lawsuit. But this is **not** a quiet-title action, and Mr. Solomon makes no assertion that Pegasus is in actual possession of the property. Nothing of record indicates that Pegasus occupies the townhouse. Thus, Pegasus is **not** indispensable to the Bank's ejectment action.

On the other hand, the unserved, unnamed members of Mr. Solomon's household **are** indispensable parties to this proceeding. Mr. Solomon pleaded in his Answer that Pegasus gave not only him, but also his "immediate family permission to occupy said premise." Solomon's Answer at 1. Moreover, the Bank mailed its Motion for Summary Judgment to Mr. Solomon's home address while he was in jail. Mr. Solomon's wife then "re-mailed the [Bank's] motion to [Mr. Solomon] at the prison." Solomon's Brief at 7. Thus, she remained in actual occupancy of the property, even though the bank did not name her as a defendant in this action. The same would be true of any other members of the Solomon family residing in the townhouse. Indeed, the Bank alleged that the other "Occupants" of the townhouse are "Defendant[s]" in this action. [7] Bank's Complaint at 1.

Any unnamed persons occupying the townhouse risk removal from the property if the Sheriff of Montgomery County executes the writ of possession

---

[7] Pennsylvania Rule of Civil Procedure 2005 addresses the procedure for filing suit against unknown defendants. The Bank did not follow that procedure in this case.

against "Micah Solomon and occupants," even though the Bank failed to join those other individuals as parties and serve them. This interest renders the additional occupants indispensable, individual defendants, and their absence from this ejectment case is fatal to the trial court's subject-matter jurisdiction.

To secure subject-matter jurisdiction the Bank needed to name and join all adult members of Mr. Solomon's family who live in the townhouse with him as additional defendants, because they had a "joint interest in the subject matter of an action." Pa.R.C.P. 2227(a). Their interests are identical to Mr. Solomon's interest, *i.e.*, remaining in the townhouse. The Bank did not specifically name these other "Occupants" as defendants in its complaint; therefore, the trial court lacked subject-matter jurisdiction.

We vacate the order granting summary judgment to the Bank and the writ of possession. Mr. Solomon's preliminary objection to the subject-matter of the court of common pleas based upon the non-joinder of indispensable parties is sustained.

Complaint dismissed without prejudice for the Bank to refile this lawsuit against all the occupants of the townhouse by name.
*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date: 2/10/2021*

- 11 -